Allegaert Berger & Vogel LLP
111 Broadway, 20th Floor
New York, New York 10006
(212) 571-0550
Attorneys for Plaintiff

UNITED STATES DISRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
                                                             )
JANE A. HALBRITTER,                                          )
                                                             )
                              Plaintiff,                     )
                                                             )       07 Civ. 3848 (WHP)
             -- against --                                   )
                                                             )
STONEHEDGE ACQUISITION ROME II, LLC                          )
and STONEHEDGE ACQUISITION                                   )
CHITTENANGO II, LLC,                                         )
                                                             )
                              Defendants.                    )
                                                             )
-------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER
## MOTION TO DISMISS THE COUNTERCLAIMS

ALLEGAERT BERGER & VOGEL LLP
Louis A. Craco, Jr. (LC-9786)
Attorneys for Plaintiff
111 Broadway, 20th Floor
New York, New York 10007
Telephone:    (212) 616-7055
Facsimile:    (212) 571-0555
E-mail:       lcraco@abv.com

Allegaert Berger & Vogel LLP
111 Broadway, 20th Floor
New York, New York 10006
(212) 571-0550
Attorneys for Plaintiff

UNITED STATES DISRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                           )
JANE A. HALBRITTER,                                        )
                                                           )
                            Plaintiff,                     )
                                                           )      07 Civ. 3848 (WHP)
              -- against --                                )
                                                           )
STONEHEDGE ACQUISITION ROME II, LLC                        )
and STONEHEDGE ACQUISITION                                 )
CHITTENANGO II, LLC,                                       )
                                                           )
                            Defendants.                    )
                                                           )
-----------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION TO DISMISS THE COUNTERCLAIMS

Plaintiff Jane A. Halbritter ("Halbritter") respectfully submits this Memorandum of Law in support of her motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss defendants' Counterclaims.

Halbritter seeks to recover for breaches of two Stock Purchase Agreements (the "SPAs") pursuant to which she and her brother, Marc Rossi (collectively, "Sellers") sold all the capital stock of four corporations that operated two nursing homes. The SPAs are attached to and incorporated in the Complaint[1]. Defendants' Answer alleges that, after the closing, they

_____

[1]The contracts at issue, the Rome and Chittenango SPAs, are attached as Exhibits 1 and 2 to the Complaint, respectively. They are identical for all purposes germane to this motion and

2

discovered the Acquired Corporations had liabilities of which defendants were previously unaware.  Defendants have asserted seven substantive Counterclaims[2] each of which identifies a different alleged corporate liability and seeks to recovery for it pursuant to the Sellers' Indemnification provisions of the SPAs.

Th SPAs, however, quite specifically condition Sellers' indemnification obligations upon receipt from defendants of notice as to any liability for which indemnification is sought.  The SPAs spell out, in considerable detail, what the substance of that notice must be; the time within which it must be given; the manner in which it must be sent; and the persons to whom, and addresses at which, it must be delivered.  The SPAs clearly and repeatedly state that Sellers will have no obligation to indemnify defendants for anything unless notice of the asserted liability is given in conformity with the SPAs requirements.

Defendants' Answer admits that they never provided, or even tried to provide, the contractually specified notice to Sellers with respect to any of the liabilities for which they now seek indemnification in the Counterclaims.  This admission, by itself, requires dismissal of all the Counterclaims as a matter of law.  Bell Atlantic Corp. v. Twombley, 127 S.Ct. 1955 (2007).  See Point I, infra.

Wholly apart from the notice issue, six of the seven substantive Counterclaims also fail to state claims for other reasons.  See Point II, infra.

I.    All the Counterclaims Must be Dismissed Because of Defendants' Total Failure to Comply with the Contractually Specified Notice Provisions.

---

citation herein to particular sections refer to both SPAs.

[2]The Eighth Counterclaim alleges no facts and seeks no relief.  (Answer ¶¶ 146-148).

3

A.    <u>Pertinent Provisions of the SPAs</u>

The SPAs contain extensive and specific provisions concerning notice for

indemnification claims, all of which defendants have ignored.

Sellers' indemnification obligations are governed by Article XII of the SPAs.

Section 12.1, "<u>Indemnification by the Sellers</u>", requires Sellers to indemnify Buyers for seven

classes of "Buyers' Losses", identified in subsections (a) through (g).  The following section, §

12.2, "<u>Notice of the Buyer's Losses</u>" provides:

> The Sellers shall have no indemnification obligation under this
> Article XII unless a Claim Notice (as defined in Section 12.6(f)[3])
> shall be delivered to Sellers by or on behalf of any of the Buyers'
> Indemnified Persons in the manner provided below.

Section 12.7, "<u>Notice and Procedure</u>", governs the assertion and resolution for

claims of indemnification generally.  Subsection 12.7(a) governs the procedure for "Third-Party

Claims":

> In the event that any claim or demand is asserted by a Person other
> than a Party (the "<u>Third-Party Claim</u>") for which an Indemnifying
> Party may be liable for the Buyer's Losses or the Seller's Losses, as
> the case may be (either the Buyer's Losses or the Seller's Losses,
> the "<u>Losses</u>"), under this Agreement, the Party claiming
> indemnification (the "<u>Indemnified Party</u>") shall, within twenty (20)
> calendar days of the receipt of notice of the Third-Party Claim,
> deliver a Claim Notice to the Indemnifying Party.  *If the
> Indemnified Party fails to provide the Indemnifying Party with the
> Claim Notice within the foregoing time period, the Indemnifying
> Party shall have no indemnification obligations with regard to such
> Third-Party Claim.*

(<u>Emphasis</u> <u>added</u>.)

---

[3]The reference to "Section 12.6(f)" is an obvious scrivener's error.  "Claim Notice" is
defined in § 12.7(f).

4

"Claim Notice" is defined at §12.7(f) as "written notification of a Third-Party Claim by an Indemnified Party to an Indemnifying Party, enclosing a copy of all papers served, if any, and specifying the nature of and alleged basis for such Third-Party Claim and, to the extent then feasible, the alleged amount or the estimated amount of such Third-Party Claim."

Indemnification for Claims other than Third-Party Claims is covered by § 12.7(d), which states:

> In the event any Indemnified Party should have a claim under this Agreement against any Indemnifying Party that does not involve a Third Party Claim, the Indemnified Party shall, within twenty (20) calendar days of gaining actual knowledge of such claim, deliver an Indemnity Notice (as defined below) to the Indemnifying Party. *The failure by any Indemnified Party to timely deliver an Indemnity Notice to the Indemnifying Party shall release and discharge the Indemnifying Party from any liability or responsibility pertaining to the respective claim.*

The "Indemnity Notice" required by § 12.7(d) for non-Third Party claims is defined at § 12.7(g) as "written notification of a claim for indemnification (other than a Third-Party Claim) by an Indemnified Party to an Indemnifying Party specifying the nature of and specific basis for such claim and, to the extent then feasible, the amount or the estimated amount of such claim."

Section 12.12, "Overpayments and Audit Liabilities", provides for Sellers to indemnify Buyers for liabilities arising under Medicare, Medicaid and/or any other Third-Party Payor programs, "in accordance with the indemnification *and notice provisions set forth below*" (emphasis added).  Section 12.12(b), in turn, provides:

> In the event that the Company or the Buyer receives any notice, claim, demand or other written document from a Payor or other party that potentially could give rise to or that otherwise relates to a Pre-Closing

5

Payor Liability, the *Buyer shall deliver to the Sellers a copy of such notice no later than five (5) business days after the receipt thereof.*

(Emphasis added). Accordingly, § 12.12( c), makes the Sellers responsible for Payor Liabilities of the Buyer "*[p]rovided the Buyer had given timely and proper notice to the Sellers as provided for in paragraph (b).* (Emphasis added).

Finally, § 14.7, "Notices", states:

Any notice, demand or communication required, permitted, or desired to be given under this Agreement shall be deemed effectively given when: (i) personally delivered, (ii) delivered by facsimile, (iii) delivered by nationally recognized overnight courier; or (iv) five (5) days after being sent by certified or registered mail, return receipt requested, addressed as follows:

<div style="margin-left:2em">

The Buyer:    Stonehedge Acquisition Rome II, LLC
              c/o Joseph Kazarnovsky, Managing Member
              14 Hidden Valley Drive
              Suffern, New York 10901

copy to:      Abrams, Fensterman, Fensterman, Flowers &
              Eisman, LLP
              1111 Marcus Avenue, Suite 107
              Lake Success, New York 11042
              Attn: Mark Zafrin, Esq.

The Sellers:  Jane Halbritter
              100 West Garden Street
              Rome, New York 13440

              Marc Rossi
              6866 Stokes Westernville Road
              Ava, New York 13303

copy to:      Epstein, Becker & Green, P.C.
              250 Park Avenue
              New York, New York 10021
              Attn: Jay Gerzog, Esq.

</div>

or to such other address or number, and to the attention of such

6

other Person or officer, as any party may designate, at any time, in
writing in conformity with these notice provision.  Notwithstanding
the foregoing, notice to the Buyer's Counsel and/or the Sellers'
Counsel shall not, in and of itself, constitute notice for purposes of
this Agreement.

The Notice provisions described above are not mere formalities.  They are highly

material terms of the SPAs, which provide several significant protections to Sellers.  First, § 12.8,

"Required Notice and Cure Rights", makes clear that delivery of notice triggers a 48-hour cure

period for any alleged breach.  Furthermore, except for "Payor Liabilities", Sellers'

indemnification obligations survive for only one year after closing unless, within that time, the

Buyers give notice of the claim "in accordance with the provisions of this Article XII." See §12.9,

"Survival".  Moreover, in the case of a demand by Buyer for indemnity for a Third-Party Claim or

Payor Liability, timely delivery of a Claim Notice or notice of a Payor Liability triggers Sellers'

rights take over the defense of the claim and/or to negotiate directly with the party to whom the

liability is owed.  (See §§ 12.7(a), 12.7(d) and 12.12(b).)  In the case of a demand for

indemnification that does not involve a Third-Party Claim, delivery of an Indemnity Notice starts

a 30-day period for Sellers to dispute the claim; if they do so, the SPAs impose a 60-day

negotiation period before Buyers can sue.  (See §§ 12.7(d) and (e).)

      B.     The First Counterclaim

Defendants' First Counterclaim alleges that after the closing Medicaid demanded

repayment of $234,933.92 in previous reimbursements covering an unspecified period prior to the

January 1, 2006.  Defendants characterize this demand as a "Payor Liability" within the meaning

of § 12.12(a).  (Answer, ¶¶ 64-66).  To obtain indemnification for it, therefore, defendants had to

deliver a copy of Medicaid's demand to Sellers within five days after receiving it and in the

7

manner prescribed in § 14.7.  Also, under § 12.7, within 20 days, defendants would have had to deliver a Claim Notice – i.e., written notice specifying the nature, basis and, to the extent practicable, amount of the Medicaid claim.    Defendants admit they did not do these things. (Answer ¶ 68).  The First Counterclaim must therefore be dismissed.

        C.      <u>The Second Through Seventh Counterclaims</u>

        Each of the remaining substantive Counterclaims seeks indemnification for an alleged corporate liability that defendants claim to have discovered after closing.  The Second Counterclaim alleges that the closing purchase price was not reduced sufficiently to cover acccrued employee compensation.  (Answer ¶¶ 74-90).  The Third Counterclaim alleges that the Acquired Corporations had to pay fourth quarter 2005 payroll taxes for which Sellers had not adequately reserved.  (Answer ¶¶ 91-104).  The Fourth, Fifth and Sixth Counterclaims seek to recover penalties and professional fees incurred as a result of Sellers' failure to cause the Acquired Corporations to make various tax or regulatory filings.  (Answer ¶¶ 105-130).  The Seventh Counterclaim alleges that Sellers were obliged, after the closing, to "reconcile" December 2005 accounts receivable.  (Answer ¶¶ 131-145).

        No Claim Notice or Indemnity Notice was give with respect to any of these claims. Accordingly, pursuant to § 12.9, any indemnification obligations Sellers might otherwise have had with respect to these asserted liabilities expired one year after the closing, i.e., on January 3, 2007.

        D.      <u>Defendants' Contention that Plaintiffs Waived the Notice Requirements is Without Merit.</u>

        Defendants attempt to plead around this fatal failure to give notice by alleging that Sellers engaged, after the closing, in communications that effectively waived the notice

requirements. (Answer ¶¶ 68-73). This argument fails, because of the explicit non-waiver

provisions of § 14.8, "Waiver, Discharge, etc.":

> This Agreement shall not be released, discharged, abandoned, changed
> or modified in any manner *except by an instrument in writing* executed
> by or on behalf of each of the parties hereto by their duly authorized
> officer or representative. The failure of any party to enforce at any time
> any of the provisions of this Agreement *shall in no way be construed to
> be a waiver of any such provision,* nor in any way to affect the validity
> of this Agreement or any part hereof or the right of any party thereafter
> to enforce each and every such provision. No waiver of any breach of
> this Agreement shall be held to be a waiver of any other or subsequent
> breach.

(Emphasis added).

Defendants' waiver argument is also factually baseless. The SPAs notice

requirements apply to "[a]ny notice, demand or communication required, permitted or desired to

be given *under this Agreement*". (Section 14.7; emphasis added). None of the alleged post-

closing communications by plaintiffs or defendants upon which defendants base their waiver

argument concerns a contractual right or obligation arising under the SPA (See Answer, ¶¶ 69,

70).

II.     Six of the Counterclaims Also Fail to State Claims for Other Reasons.

Independently of the notice issue, six of the seven substantive Counterclaims are

facially defective for other reasons.

A.     The First Counterclaim

Section 12.12(a), "Overpayments and Audit Liabilities" provides, in relevant part,

for Sellers to indemnify Buyers:

> for all Payor Liabilities for reporting or claims periods on or after the
> date which is three (3) years immediately prior to the Closing Date

and ending on or prior to the Closing Date, but only to the extent that
such claims (i) are not otherwise collectible by the Company from
other payment sources; and (ii) in the aggregate exceed the sum of
One Hundred Thousand Dollars ($100,000).

The First Counterclaim seeks to recover $234,933.92 that the Acquired

Corporations are supposedly obliged to repay to Medicaid for earlier over-reimbursements.  The

SPAs , however, limit Sellers' indemnification obligation to Medicaid liabilities arising in the

three years prior to the closing.  The Counterclaim fails to allege that any part of this supposed

liability to Medicaid arose during that time.

Also, the SPAs only require Sellers to indemnify defendants for repayments to

Medicaid "to the extent such claims. . . . are not otherwise collectible by the Company from other

payment sources".  Defendants fail to allege that the $234,933.92 at issue was, to any extent, not

otherwise collectible by the Company from other payment sources.  Since such non-collectibility

is a condition precedent to Sellers' indemnification duty under § 12.12(a), it must, at least, be

generally averred.  See Fed. R. Civ. P. 9(c).  The absence of such an averment requires dismissal.

Even if Sellers were obliged to indemnify defendants for this alleged liability, that

obligation would have to be reduced by $22,574, the sum of  amount of an agreed-upon "CMI"

adjustment at closing (see Combined Closing Statement, Ex. 3 to the Complaint).  Furthermore, §

12.12(a) requires Sellers to indemnify for such liabilities only to the extent they exceed $100,000.

Thus, if defendants were obliged to repay $234,933.92 to Medicaid, under no circumstance could

they require the Sellers to indemnify them for more than $112,353.92.

B.     The Second Counterclaim

The Second Counterclaim seeks to recover for employee compensation accruals.

10

The SPAs limit Sellers' obligation to indemnify defendants for such accruals to those which have

not "been reserved for or reflected on the Closing Date Balance or otherwise taken into account"

as a closing adjustment.  The employee accruals at issue clearly *were* taken into account, as an

agreed-upon $100,000 closing adjustment reflected on the Combined Closing statement (see

Complaint, Ex. 3).

Defendants' allegation that they "were not afforded the opportunity to discovery

this liability prior to closing" (Answer, ¶ 85) is foreclosed by § 12.10(b):

> Buyer and Buyer Affiliates, and their successors and assigns, hereby
> expressly acknowledge and agree that: (i) neither the Sellers not the
> Company shall have any liability to the Buyer, any Buyer Affiliate, or
> any successor or assigns thereof, with regard to the Sellers' or the
> Company's failure to disclose any fact or other information that is
> required to be disclosed to the Buyer, any Buyer Affiliate, or any
> successor or assigns thereof pursuant to this Agreement, or which if
> known by the Sellers, would constitute a breach by the Sellers or the
> Company hereunder, which fact or other information Buyer or any
> Buyer Affiliate otherwise had Knowledge of on or prior to Closing or
> was discovered or reasonably discoverable by the Buyer or any Buyer
> Affiliate during the conduct of their due diligence review of the
> Sellers, the Company and the operations thereof; *and (ii) Buyer's
> decision to consummate the closing of the transactions contemplated
> hereunder shall constitute a waiver of any claims that either Buyer,
> any Buyer Affiliate, or their successors and assigns may have against
> the Sellers or the Company.*

(Emphasis added).

C.    The Fourth, Fifth and Sixth Counterclaims

The Fourth, Fifth and Sixth Counterclaims seek to recover penalties and

professional fees incurred as a result of defendants' failure to cause the Acquired Corporations to

make various tax or regulatory filings weeks or months after the closing.  These claims are all

fatally flawed because responsibility to see to timely corporate filings passed to Buyers at the

11

closing.  Nothing in the contracts imposes any duty upon Sellers to make such post-closing filings.

The Fourth Counterclaim accuses Sellers of failing to cause the Acquired Corporations' payroll tax returns for the last quarter of 2005 to be timely filed.  Defendants admit, however, that these returns were not due to be filed until weeks after the January 3, 2006 closing.  (Answer ¶ 107).  Section 5.17(a), of the SPAs, "Taxes", states, in relevant part:

> The Company has *within the time and in the manner proscribed by law* (including any applicable extension periods): (i) duly filed with the appropriate federal, state and local taxing authorities of all Tax Returns (as defined below) *required to be filed* by or with respect to the Company pursuant to the Internal Revenue Code of 1986, as amended or any other . . . .or any applicable state or local tax laws for all periods prior to and through the Closing Date. . . ."

As defendants admit, the fourth quarter payroll taxes were not "required to be filed" before closing.  No allegation is made that Sellers failed to cause the Acquired Corporations to make any tax filing "within the time and in the manner proscribed by law".

The Fifth Counterclaim seeks to hold plaintiff liable for failing to file Forms 1099 and W-2s for the tax year 2005.  But1099s and W-2s for 2005 were also not "required to be filed" prior to January 3, 2006.  Defendants also allege that  "[p]ursuant to § 5.17(a) of the [SPAs] preparation of these forms was plaintiff's responsibility" (Answer ¶ 116).  Section 5.17(a) however, says nothing about "preparation" of such forms, let alone about any duty of Sellers to prepare them *after* closing.

Similarly, the Sixth Counterclaim alleges that Sellers failed, at or before the closing, to "make provision for the preparation of" the New York State RHCF-4 Forms for the year ended December 31, 2005.  Again, defendants do not, and cannot, allege that the law *required* the RHCF-4s for the period ended December 31, 2005 to be filed before January 3, 2006.

Defendants cite SPA § 11.2(a), but that section simply states that "the Company" -- not the Sellers -- "shall prepare and timely file all required reports" relating to periods ending on or before the Closing Date.  Nothing in that section, or anywhere else in the SPAs, imposes a duty on the Sellers to "prepare" RHCF-4s that are not "required" to be filed before the Closing Date.

      D.     The Seventh Counterclaim

The Seventh Counterclaim alleges an oral promise allegedly made prior to the Closing, not by Sellers, but rather by an unidentified accountant, to engage in a "post-closing reconciliation" for December 2005 billings.  (Answer ¶¶ 136-138).  No such term appears anywhere in the SPAs.  Assertion of such an oral term is flatly inconsistent with § 14.4, which states that the SPAs, together with their Schedules, "embody the entire agreement and understanding of the parties and supercede any and all prior agreements, arrangements and understandings relating to matters provided for herein".

<u>Conclusion</u>

For the foregoing reasons, the counterclaims should be dismissed on their entirety.


Dated: New York, New York
      January 4, 2008

               Louis A. Craco, Jr. (LC-9786)
               ALLEGAERT BERGER & VOGEL LLP
               Attorneys for Plaintiff
               111 Broadway, 20th Floor
               New York, New York 10007
               Telephone:    (212) 616-7055
               Facsimile:     (212) 571-0555
               E-mail:        lcraco@abv.com

13