# EXHIBIT - C

# RECEIVABLES AGREEMENT

This Receivables Agreement (this "Agreement") is made as of December 31, 2005 by and among Stonehedge Acquisition Chittenango II, LLC and Stonehedge Acquisition Rome II, LLC (hereinafter collectively referred to as the "Buyers"), and Jane A. Halbritter and Marc A. Rossi (hereinafter collectively referred to as the "Sellers")

WHEREAS, as of December 31, 2005, Sellers sold to Buyers all of their capital stock in Stonehedge Nursing Home Chittenango, Inc. and Stonehedge Nursing Home Rome, Inc. (hereinafter collectively referred to the as the "Acquired Corporations"); and

WHEREAS, the Acquired Corporations collectively, as of December 31, 2005, carried on their books approximately $2,407,211.00 in accounts receivable; and

WHEREAS, Buyers maintain that $473,884 of those accounts receivable are uncollectible (hereinafter referred to as the "Disputed Receivables," which are itemized on Schedule A of this Agreement) and, therefore, insisted that the purchase price for the Sellers' capital stock be reduced by $473,884; and

WHEREAS, Sellers are willing to agree to this purchase price reduction on the conditions that the Buyers: (i) pay the face value for those accounts receivables that are not in dispute (i.e., $1,549,977), (ii) convey to the Sellers any and all amounts that are collected from time to time in the future with respect to the Disputed Receivables, (iii) hereby appoint the Sellers and their designated agents, individually and collectively, as agents for the Buyers for purposes of collecting the Disputed Receivables, and (iv) shall fully cooperate with, and assist, the Sellers in their collection efforts; and

WHEREAS, Buyers are willing to agree to Sellers' proposal regarding the Disputed Receivables as provided for herein.

NOW, THEREFORE, in consideration of the mutual agreements, covenants and representations contained herein, together with other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Sellers and Buyers agree as follows:

1. <u>Appointment of Sellers as Agents.</u> The Buyers hereby nominate and appoint the Sellers and their designated agents as the Buyers' agents and attorneys-in-fact for the sole purpose of collecting the Disputed Receivables. The Sellers shall have the authority, jointly and severally and at the Sellers' sole cost and expense, to take any and all actions, that in the opinion of the Sellers ought to be taken, to collect the Disputed Receivables, including but not limited to:

    a.    Demanding, suing for, receiving and collecting the Disputed Receivables;

    b. Making, signing, acknowledging, endorsing or delivering any instruments of any nature whatsoever required for the collection of, or to facilitate the collection of, the Disputed Receivables;

    c. Compromising, settling or submitting to arbitration any claims associated with the Disputed Receivables and giving releases in connection with such Receivables; and

    d. Without limiting the above powers, generally performing any other acts of any nature whatsoever that in the opinion of the Sellers are reasonably necessary for the collection of the Disputed Receivables.

 Any person, firm or corporation shall be fully protected in relying upon this delegation of legal authority.

 The Buyers hereby ratify and confirm all actions which may be taken by the Sellers with respect to the Disputed Receivables so long as such actions do not interfere with the operation of the business of the Buyers or their respective tenants.

 2. <u>Payment to Sellers of Disputed Receivables.</u> All payments, whether partial or in full, received by Buyers on or after the date of this Agreement with respect to any Disputed Receivable shall be the property of the Sellers, and Buyers hereby wave any and all rights and, shall make no claim against Sellers, with respect to such payments. Buyers shall notify Sellers immediately upon receipt of any payment on a Disputed Receivable, and Buyers shall remit any and all such payments to Sellers within three (3) business days of their receipt.

 3. <u>Summary of Disputed Receivables.</u> Within ten days (10) after the close of each month, Buyers shall provide to Sellers a list of the outstanding Disputed Receivables, the payments received on any such Disputed Receivables during the preceding month and the date of receipt of such payments. From time to time, Sellers shall provide to Buyers, in writing, a list of any Disputed Receivables which Sellers have determined to be uncollectible and with respect to which Sellers have ceased all collection efforts. Such Receivables shall no longer be considered outstanding.

 4. <u>Audit of Books and Records.</u> Sellers shall have the right, upon ten (10) days prior written notice to Buyers, to conduct an audit of Buyers' books and records to insure compliance with the terms of this Agreement so long as such audits shall only cover one (1) time per fiscal quarter.

5. <u>Promises and Covenants of Buyers.</u>  Buyers make the following promises and covenants to Sellers:

    a.  To take any additional actions and do anything else that may be required to constitute Sellers and their designated representatives as Buyers' agents and attorneys-in-fact for purposes of collecting the Disputed Receivables;

    b.  To act in good faith and reasonably cooperate with the Sellers in their efforts to collect the Disputed Receivables;

    c.  To provide Sellers, upon Sellers' request, with specific information necessary for the collection of the Disputed Receivables to the extent that such information is in Buyers' control or possession or with respect to which Buyers have knowledge; and

    d.  To make commercially reasonable efforts to assist Sellers with collection of the Disputed Receivables.

6. <u>Promises and Covenants of Sellers.</u>  The Sellers make the following promises and covenants to Buyers.

    a.  To act professionally, responsibly and in keeping with accepted business practices in collecting the Disputed Receivables;

    b.  To act in good faith and reasonably cooperate with Buyers in Buyers' efforts to collect all receivables *other than* the Disputed Receivables;

    c.  To provide Buyers, upon Buyers' request, with any information, known to the Sellers and not otherwise known or reasonably available to the Buyers, necessary for the collection of receivables *other than* the Disputed Receivables.

7. <u>Notices.</u> Any communication or notice required or permitted hereunder shall be in writing and conclusively deemed to have been delivered and effective as of the date it was actually delivered, if hand delivered; the date of confirmed answer, if sent by fax; or on the date it was received, if mailed in a sealed envelope, postage prepaid, by certified or registered mail; all addressed to such party at the following address or fax number (or such other address or fax number as either party may subsequently add or substitute by proper notice hereunder to the other party):

<u>Buyers</u>:


<u>Sellers</u>:

8. <u>Severability.</u> If any part or provision of this Agreement shall be determined to be invalid or unenforceable under the laws of New York, the remaining portions of this Agreement that can be given effect shall nevertheless continue in full force and effect.

9. <u>Modification.</u> This Agreement may not be changed orally, and any modification hereto must be in writing signed by all parties.

10. <u>Binding Effect.</u> This Agreement shall be binding and inure to the benefit of the parties to this Agreement, their legal representatives, successors and assigns.

11. <u>Entire Agreement.</u> This Agreement constitutes the entire agreement between the parties with respect to the Disputed Receivables.

12. <u>Non-waiver.</u> No delay or failure by a party to exercise any right under this Agreement, and no partial or single exercise of that right, shall constitute a waiver of that or any other right, unless otherwise expressly provided herein.

13. <u>Assignment.</u> The rights and interests of the parties may not be sold, transferred, assigned, pledged, encumbered or hypothecated by them, unless expressly permitted in writing by the other party, which permission may be withheld for any or no reason.

14. <u>Headings.</u> Headings in this Agreement are for convenience only and shall not be used to interpret or construe its provisions.

15. <u>Governing Law.</u> This Agreement shall be construed in accordance with and governed by the laws of the State of New York.

[CONTINUED ON NEXT PAGE]

16 . Term. This Agreement shall be in full force and effect for so long as there are any outstanding Disputed Receivables.

IN WITNESS WHEREOF the parties hereto have signed and sealed this Agreement this 3rd day of January, 2006.

BUYERS:

Stonehedge Acquisition Chittenango II, LLC

By: _____

Stonehedge Acquisition Rome II, LLC

By: _____

SELLERS:

_____
Jane A. Halbritter

_____
Marc A. Rossi