**EXHIBIT - M**

12/28/2006
15:17:40

CITY OF ROME, NY
REAL ESTATE TAX STATEMENT

PAGE 1

PARCEL: 203.000-0001-029.000-0000

LOCATION: Gore Rd

CURRENT OWNER:
GORE ROAD LLC
801 N JAMES ST
ROME NY 13440

CURRENT STATUS:
ACRES:                          16.300
LAND VALUATION:
BUILDING VALUATION:
EXEMPTIONS:
TAXABLE VALUATION :

DEED DATE:

BOOK/PAGE:

| YEAR | TYPE | CHARGE | BILLED | PRIN DUE | INT/COST | TOTAL DUE |
|------|------|--------|--------|----------|----------|-----------|
| | | | | | INTEREST DATE: 12/28/2006 | |
| 2007 | RE-R 1 | LIBRARY TA | | | | |
| 2007 | RE-R 1 | SCHOOL TAX | | | | |
| | | 1st INST. TOTAL | | | | |
| 2007 | RE-R 2 | LIBRARY TA | | | | |
| 2007 | RE-R 2 | SCHOOL TAX | | | | |
| | | 2nd INST. TOTAL | | | | |
| | | BILL# 710039 | | | | |
| 2007 | RE-C 1 | GENERAL CI | | | | |
| 2007 | RE-C 2 | GENERAL CI | | | | |
| | | BILL# 735133 | | | | |
| 2006 | RE-O 1 | ONEIDA COU | | | | |
| | | 1 STATE/FEDE | | | | |
| | | 1 PUBLIC SAF | | | | |
| | | BILL# 10041 | | | | |
| 2006 | RE-C 1 | GENERAL CI | | | | |
| 2006 | RE-C 2 | GENERAL CI | | | | |
| | | BILL# 22812 | | | | |
| 2006 | RE-R 1 | SCHOOL TAX | | | | |
| 2006 | RE-R 2 | SCHOOL TAX | | | | |
| | | BILL# 6509897 | | | | |
| 2005 | RE-C 1 | CITY TAX | | | | |
| 2005 | RE-C 2 | CITY TAX | | | | |
| | | BILL# 5010013 | | | | |
| 2005 | RE-1 1 | METER WATE | | | | |
| | | BILL# 5010013 | | | | |
| 2005 | RE-2 1 | METER WATE | | | | |
| | | BILL# 5300511 | | | | |

REDACTED

```
12/28/2006
15:17:40
```

CITY OF ROME, NY
REAL ESTATE TAX STATEMENT

PAGE 2

| YEAR | TYPE | CHARGE | BILLED | PRIN DUE | INT/COST | TOTAL DUE |
|---|---|---|---|---|---|---|
| 2005 RE-3 1 | | METER WATE BILL# 5350501 | | | | |
| 2005 RE-R 1 | | SCHOOL TAX BILL# 5400508 | | | | |
| 2005 RE-R 2 | | SCHOOL TAX | | | | |
| 2005 RE-O 1 | | COUNTY TAX BILL# 5509814 | | | | |
| 2004 RE-C 1 | | CITY TAX BILL# 6109909 | | | | |
| 2004 RE-C 2 | | CITY TAX | | | | |
| 2004 RE-1 1 | | METERED WA BILL# 4005540 | | | | |
| 2004 RE-1 1 | | METERED WA BILL# 4250478 | | | | |
| 2004 RE-2 1 | | METERED WA BILL# 4300475 | | | | |
| 2004 RE-3 1 | | METERED WA BILL# 4350475 | | | | |
| 2004 RE-4 1 | | METERED WA BILL# 4400474 | | | | |
| 2004 RE-R 1 | | SCHOOL TAX BILL# 4509481 | | | | |
| 2004 RE-R 2 | | SCHOOL TAX | | | | |
| 2004 RE-O 1 | | COUNTY TAX BILL# 5109852 | | | | |
| 2003 RE-C 1 | | CITY TAX BILL# 3009380 | | | | |
| 2003 RE-C 2 | | CITY TAX | | | | |
| 2003 RE-O 1 | | COUNTY TAX BILL# 3209800 | | | | |

REDACTED

12/28/2006
15:17:40

CITY OF ROME, NY
REAL ESTATE TAX STATEMENT

PAGE 3

| YEAR | TYPE | CHARGE | BILLED | PRIN DUE | INT/COST | TOTAL DUE |
|---|---|---|---|---|---|---|
| 2003 | RE-1 1 | METERED WA | | | | |
| | BILL# 3360467 | | | | | |
| 2003 | RE-2 1 | METERED WA | | | | |
| | BILL# 3380456 | | | | | |
| 2003 | RE-3 1 | METERED WA | | | | |
| | BILL# 3400464 | | | | | |
| 2003 | RE-4 1 | METERED WA | | | | |
| | BILL# 3450469 | | | | | |
| 2003 | RE-R 1 | SCHOOL TAX | | | | |
| 2003 | RE-R 2 | SCHOOL TAX | | | | |
| | BILL# 3508500 | | | | | |
| 2002 | RE-C 1 | CITY TAX | | | | |
| 2002 | RE-C 2 | CITY TAX | | | | |
| | BILL# 2009467 | | | | | |
| 2002 | RE-O 1 | COUNTY TAX | | | | |
| | BILL# 2208578 | | | | | |
| 2002 | RE-2 1 | METERED WA | | | | |
| | BILL# 2400444 | | | | | |
| 2002 | RE-3 1 | METERED WA | | | | |
| | BILL# 2450442 | | | | | |
| 2002 | RE-R 1 | SCHOOL TAX | | | | |
| 2002 | RE-R 2 | SCHOOL TAX | | | | |
| | BILL# 2507113 | | | | | |
| 2002 | RE-4 1 | METERED WA | | | | |
| | BILL# 2550440 | | | | | |
| 2007 | UB-U 1 | 3" METERED | | | | |
| | BILL# 10115 | | | | | |
| 2006 | UB-U 1 | 3" METERED | | | | |
| | BILL# 1171 | | | | | |

REDACTED

12/28/2006
15:17:41

CITY OF ROME, NY
REAL ESTATE TAX STATEMENT

PAGE 4

| YEAR TYPE | CHARGE | BILLED | PRIN DUE | INT/COST | TOTAL DUE |
|---|---|---|---|---|---|
| 2006 UB-U 1 3" METERED | | | | | |
| 2006 UB-U 1 3" METERED | | | | | |
| BILL# | 1985 | | | | |
| 2006 UB-U 1 3" METERED | | | | | |
| BILL# | 2798 | | | | |
| 2006 UB-U 1 3" METERED | | | | | |
| BILL# | 3621 | | | | |
| 2005 UB-U 1 3" METERED | | | | | |
| BILL# | 354 | | | | |
| GRAND TOTALS | | | | | |



REDACTED

# WESTMORELAND CENTRAL SCHOOL

Bill No.      000100
Sequence No.        100
Page No.      1 of 1

* For Fiscal Year 07/01/2007 to 06/30/2008        * Warrant Date 08/28/2007

| MAKE CHECKS PAYABLE TO: | TO PAY IN PERSON | SWIS S/B/L ADDRESS & LEGAL DESCRIPTION & CK DIGIT |
|---|---|---|

TAX COLLECTOR
WESTMORELAND C.S.D.
5176 RTE. 233, PO BOX 430
WESTMORELAND, NY 13490

CITIZENS BANK
89 ORISKANY BLVD.
WHITESBORO, NY 13492

**301389    259.003-0002-087**
**Address:**    Evans Rd
**Town of:**    Rome NY
**School:**    Westmorland Sch Dist
NYS Tax & Finance School District Code: 695
    322 - Rural vac>10          **Roll Sect.**  1
    **Parcel Dimensions:**    60.00 X    0.00
    **Account No.**    16430 02
    **Bank Code**

Rees Jane A
Jane Halbritter
100 W Garden St
Rome, NY 13440

**Estimated State Aid:**    SCHL

PROPERTY TAXPAYER'S BILL OF RIGHTS

The assessor estimates the Full Market Value of this property as of July 1, 2006 was:

The Total Assessed Value of this property is:

The Uniform Percentage of Value used to establish assessments in your municipality was:

REDACTED

If you feel your assessment is too high, you have the right to seek a reduction in the future. For further information, please ask your assessor for the booklet "How to File a Complaint on Your Assessment". Please note that the period for filing complaints on the above assessment has passed.

| Exemption | Value | Tax Purpose | Full Value Estimate | Exemption | Value | Tax Purpose | Full Value Estimate |
|---|---|---|---|---|---|---|---|

PROPERTY TAXES

| Taxing Purpose | Total Tax Levy | % Change From Prior Year | Taxable Assessed Value or Units | Rates per $1000 or per Unit | Tax Amount |
|---|---|---|---|---|---|
| City Of Rome Ny | | | | | |
| School Tax | | 3.2 | REDACTED | | 779.80 |

PAY W/O INT 9/1-10/1. IF PD 10/2-11/2 ADD 2% INT. AFTER 11/2
PAY TO ONEIDA CTY COMM OF FINANCE,PO BX 523,UTICA,NY 13503.
2% INT BY 12/5 OR US PSTMK BY 11/30. UNPDS ARE ADDED TO THE
2008 TWN & COUNTY TAX BILL AT 2% INT & 7% PNLTY.

Property description(s): L 31.6 A

| PENALTY SCHEDULE Due By: | Penalty/Interest | Amount | Total Due |
|---|---|---|---|
| 10/01/2007 11/02/2007 | | | |

REDACTED

**TOTAL TAXES DUE**        REDACTED

Apply For Third Party Notification By: 07/15/2008
Taxes paid by_____CA  CH

RETURN THE ENTIRE BILL WITH PAYMENT AND PLACE A CHECK MARK IN THIS BOX [ ] IF YOU WANT A RECEIPT OF PAYMENT. THE RECEIVER'S STUB MUST BE RETURNED WITH PAYMENT.

Town of:      Rome NY
School:      Westmorland Sch Dist
Property Address:    Evans Rd

**RECEIVER'S STUB**

Bill No.      000100
301389    259.003-0002-087
**Bank Code**

Pay By:    10/01/2007
    11/02/2007

REDACTED

Rees Jane A
Jane Halbritter
100 W Garden St
Rome, NY 13440

**TOTAL TAXES DUE**

PAYMENT SUMMARY RECEIPT

CITY OF ROME, NY
198 N. Washington St.
Rome NY 13440

DATE:  10/30/07   CUSTOMER#: MULTI
TIME:  14:52
CLERK: jmiller

RECPT#: 134259     PREV BAL:
TP/YR:  RE/2008    AMT PAID:
BILL:    805092    ADJSTMNT:
EFF DT: 10/30/07   BAL DUE:
Parcel ID: 24202700010090020000

*100 Garden*

RECPT#: 134260     PREV BAL:
TP/YR:  RE/2007    AMT PAID:
BILL:    730092    ADJSTMNT:
EFF DT: 10/30/07   BAL DUE:
Parcel ID: 24202700010090020000

RECPT#: 134263     PREV BAL:
TP/YR:  RE/2007    AMT PAID:
BILL:    737372    ADJSTMNT:
EFF DT: 10/30/07   BAL DUE:
Parcel ID: 25900300020870000000

------------------TOTALS-----------------

*Evans Rd*

PRINCIPAL PAID:
INTEREST PAID:
ADJUSTMENTS:
DISC TAKEN:

AMT TENDERED:
AMT APPLIED:
CHANGE:

PAID BY:      REES JANE A
PAYMENT METH: CHECK
PAYMENT REF:  3209

ONEIDA COUNTY DEPARTMENT OF FINANCE

PHONE: (315) 798-5754                    DATE: 12/29/06

TO:  GORE ROAD LLC
     801 N JAMES ST
     ROME   NY              13440-0000



CITY OF ROME
301389 203.000-1-29          PP  *  ASSESSMENT LAND:
ACCOUNT #:    34793004000        *  ASSESSMENT TOTAL:        
SCHOOL CODE: 301300              *  PROPERTY CLASS:

PROPERTY LOCATION:     0         GORE RD
PROPERTY DESCRIPTION:  BLDG&LAND 17.878A

*  THE ORIGINAL TOWN AND COUNTY TAX FOR 2006 TOTALS  ==>  $

ONEIDA COUNTY DEPARTMENT OF FINANCE

PHONE: (315) 798-5754                    DATE: 12/29/06

TO:  HALBRITTER JANE
     100 W GARDEN ST
     ROME   NY                    13440-0000

---

CITY OF ROME
301301 242.027-1-9.2              RM  * ASSESSMENT LAND:
ACCOUNT #:   443280070000             * ASSESSMENT TOTAL:
SCHOOL CODE: 301300                    * PROPERTY CLASS:  

PROPERTY LOCATION:      100       W GARDEN ST
PROPERTY DESCRIPTION:  H&L 175.51X160.75 IRR

* THE ORIGINAL TOWN AND COUNTY TAX FOR 2006 TOTALS  => $

```
12/28/2006                      CITY OF ROME, NY                    PAGE 1
15:22:09                REAL ESTATE PAID TAX STATEMENT

PARCEL: 259.003-0002-087.000-0000

LOCATION:  Evans Rd

CURRENT OWNER:                    CURRENT STATUS:
   REES JANE A                       ACRES:
   JANE HALBRITTER                   LAND VALUATION:        ███████
   100 W GARDEN ST                   BUILDING VALUATION:
   ROME NY 13440                     EXEMPTIONS:              ██
                                     TAXABLE VALUATION :

   DEED DATE:            BOOK/PAGE:

YEAR TYPE    DUE DATE        PRIN DUE        INT/PEN | DATE PAID       PAID AMT
---------------------------------------------------------------------------
2006 RE-O  1 01/01/2006      ██████           ███  | 02/28/2006       ██████
                             ----------    ----------              ----------
      BILL #   12267         ██████            ██                    ██████

2006 RE-C  1 01/01/2006      ██████          ███   | 06/30/2006       ██████
           2 07/01/2006      ██████          ███   | 12/28/2006       ██████
                             ----------    ----------              ----------
      BILL #   25038         ██████          ████                   ██████

       GRAND TOTALS          ██████          ████                   ██████
```

ONEIDA COUNTY DEPARTMENT OF FINANCE

PHONE: (315) 798-5754                         DATE: 12/29/06

TO:   REES JANE A                C/O JANE HALBRITTER
      100 W GARDEN ST
      ROME  NY                   13440-0000

CITY OF ROME
301389 259.003-2-87        XX  *  ASSESSMENT LAND:
ACCOUNT #:   16430002000        *  ASSESSMENT TOTAL:     
SCHOOL CODE: 306801             *  PROPERTY CLASS:

PROPERTY LOCATION:      0        EVANS RD
PROPERTY DESCRIPTION:   L 31.6 A

| TX : TAX | : CERT. : | TAX PLUS | : | INTEREST | : | ADV. | : | TOTAL |
| YR : TYPE | : NO. : | PENALTY | : | | : | FEE | : | DUE |

06 :SCHOOL :        :   736.76  :    51.57  :     0.00  : $   ▆▆▆▆▆

>>>>>>>>>   TOTAL AMOUNT DUE IF PAID BY  12/29/06   =     $   ▆▆▆▆▆

THE ABOVE SCHOOL & VILLAGE TAXES CAN NOT BE PAID AS SEPARATE BILLS AFTER
DEC. 5TH.  THE AMOUNTS WILL BE ADDED TO THE 2007 COUNTY BILL.

MAKE CHECK PAYABLE TO:              COMMISSIONER OF FINANCE
MAIL TO:                            800 PARK AVE.
                                   UTICA, NY 13501

FAILURE TO RECEIVE A TAX BILL DOES NOT WAIVE OBLIGATION TO PAY TAX OR PENALTY.
PLEASE RETURN THIS NOTICE WITH CHECK OR MONEY ORDER.
IF RETURN RECEIPT IS NEEDED, PLEASE INCLUDE SELF-ADDRESSED, STAMPED ENVELOPE.

> THE ORIGINAL TOWN AND COUNTY TAX FOR 2006 TOTALS  ==>  $  201.02  <

*************************************************************
### *** DO NOT DETACH ***

# Oneida County Clerk's Office

## Recording Page

| | | |
|---|---|---|
| Receipt #: | 330354 | --------FEES-------- |
| Instrument #: | 2007-002616 | Recording and Filing: |
| Date: | 02/02/2007 | Transfer Tax: |
| Time: | 11:52A | Basic Tax: |
| Doc Type: | MORTGAGE | Additional Tax: |
| 1st OR: | MOHAWK VALLEY HANDI | Special Tax: |
| 1st EE: | WHITE BIRCH LANDING L | Withheld: |
| Town: | ROME | Total: |
| Pages: | 23 | |
| Serial #: | CX-8252 | --------MORTGAGE TAX----- |
| Employee ID: | NG | Amount Taxed: |
| Transfer Tax #: | | --------TRANSFER TAX------- |
| | | Consideration Amount: |

REDACTED

Return Address:     WHITE BIRCH LANDING L
100 W GARDEN ST
ROME NY 13501

State of New York
County of Oneida

*** WARNING -     I hereby certify that the within and foregoing was recorded
in the Oneida County Clerk's Office, State of New York.

This sheet constitutes the Clerks endorsement required by
Section 316 of the Real Property Law of the State of New York.

**SANDRA J DEPERNO**
**County Clerk**

*************************************************************
\*          *** DO NOT DETACH ***                    *
*************************************************************

**2007-002616**
02/02/2007 11:52AM
Page: 1 of 23

SANDRA J DEPERNO, Oneida County Clerk  M





## MORTGAGE AND SECURITY AGREEMENT

THIS MORTGAGE, made the 29th day of December, 2006, **BY**

MOHAWK VALLEY HANDICAPPED SERVICES, INC., with offices at 1020 Mary Street, Utica, New York 13501,

to

WHITE BIRCH LANDING, LLC, with offices at 100 West Garden Street, Rome, New York 13440;

### W I T N E S S E T H:

#### DEFINITIONS

When used in this instrument, the following terms shall have the following meanings:

"Mortgagee" - WHITE BIRCH LANDING, LLC, while it is the holder of the **Note** and this mortgage, and if there is another holder thereof, then the holder of the **Note** and this mortgage at the time reference is made to such term.

"Mortgagor" - MOHAWK VALLEY HANDICAPPED SERVICES, INC., and if the **Collateral** is conveyed and this mortgage assumed with the consent of **Mortgagee**, each and every subsequent grantee or other transferee of the **Collateral**.

"Mortgage Debt" - The principal amount of the **Note**, all interest due thereon and any and all other moneys due to **Mortgagee** under or by virtue of the **Note** and/or this mortgage.

"Note" - A certain Mortgage Note which bears even date herewith in the amount of Two Hundred Fifty Thousand Dollars ($250,000.00) and creates and/or evidences the **Mortgage Debt** and is being executed and delivered by **Mortgagor** to **Mortgagee** simultaneously herewith, and all renewals, extensions, modifications, consolidations and replacements of the **Note** and instruments given in exchange therefor.

"Collateral" - The land (the "Premises"), with the buildings and other improvements now or hereafter situate thereon, described in Schedule A annexed hereto, together with, and which shall be deemed to include, the following:

(i)  All right, title and interest of **Mortgagor** in and to



2007-002616
02/02/2007 11:52AM
Page: 2 of 23
SANDRA J DEPERNO, Oneida County Clerk  M

the land lying in the streets and roads in front of and adjoining the Premises;

(ii)  The appurtenances and all estate and rights of **Mortgagor** in and to the Premises and the buildings and other improvements now or hereafter situate thereon;

(iii)  All fixtures, chattels and articles of personal property now or hereafter attached to or used in connection with the Premises and the buildings and other improvements thereon, including but not limited to furnaces, boilers, oil burners, radiators and piping, coal stokers, plumbing and bathroom fixtures, refrigeration, air conditioning and sprinkler systems, washtubs, sinks, gas and electric fixtures, stoves, ranges, awnings, screens, window shades, elevators, motors, dynamos, refrigerators, kitchen cabinets, incinerators, plants and shrubbery, and all other equipment and machinery, appliances, office desk and chair, shelving, compressor and cabinets, fittings and fixtures of every kind now or hereafter located on the Premises or in or used in the operation of the buildings or other improvements on and to be constructed on the Premises, together with any and all replacements thereof and additions and accessories and attachments thereto; and

(iv)  All awards heretofore and hereafter made to **Mortgagor** for taking by eminent domain the whole or any part of the Premises and the buildings and other improvements thereon or any easement therein, including any awards for changes of grade of streets, which said awards are hereby assigned to **Mortgagee**, who is hereby authorized to collect and receive the proceeds of such awards and to give proper receipts and acquittances therefor, and to apply the same towards payment of the **Mortgage Debt**, notwithstanding the fact that the amount owing thereon may not then be due and payable; and **Mortgagor** hereby agrees, upon request, to make, execute and deliver any and all assignments and other instruments sufficient for the purpose of assigning said awards to **Mortgagee**, free, clear and discharged of any encumbrances of any kind or nature whatsoever.

Any reference in this mortgage to "**Collateral**" shall, unless expressly provided otherwise, include all the "**Collateral**" unless reference to just a part thereof is expressly mentioned or unless the context clearly implies otherwise.



2007-002616
02/02/2007 11:52AM
Page: 3 of 23

SANDRA J DEPERNO, Oneida County Clerk  M

## MORTGAGEE'S SECURITY

That to secure payment of the **Mortgage Debt** according to the **Note**, **Mortgagor** hereby mortgages the **Collateral** to **Mortgagee**. This mortgage creates, as of the date hereof, a first mortgage lien on the **Collateral**.

## MORTGAGEE'S FURTHER SECURITY

To the extent not inconsistent with any separate or other assignment of rents from the **Collateral**, as further security for the payment of the **Mortgage Debt** or so much thereof as may be advanced, **Mortgagor** hereby assigns to **Mortgagee** the rents under each present and future lease of the **Collateral** or any part thereof and grants to **Mortgagee** the right to collect the same, including the right to enter on the **Collateral** for such purpose, and to apply the same after payment of all necessary charges and expenses on account of the **Mortgage Debt**, which assignment and grant shall continue in effect until the **Mortgage Debt** is paid in full; with the understanding and agreement that **Mortgagee** hereby waives the right to collect such rents and **Mortgagor** shall be entitled to collect and receive the same until default under any of the covenants, conditions or agreements contained in this mortgage or in any separate or other assignment of rents from **Mortgagor** to **Mortgagee**, and agrees to use such rent in payment of the **Mortgage Debt** and in the payment of taxes, assessments, sewer rents, water rates, insurance premiums and carrying charges becoming due against the **Collateral**. The provisions of Section 291(f) of the Real Property Law are hereby made a part of this mortgage in the same manner as though herein set out in full.

## MORTGAGOR'S COVENANTS

1.  Payment of Mortgage Debt.

    1.1  **Mortgagor** will pay the **Mortgage Debt** as provided in the **Note**.

    1.2  **Mortgagor** will, within five (5) days upon request in person or within ten (10) days upon request by mail, furnish a written statement, duly acknowledged, of the amount due on the **Mortgage Debt**, the date from which interest included therein is due, and whether any offsets or defenses exist against the same.



2007-002616
02/02/2007 11:52AM
Page: 4 of 23

SANDRA J DEPERNO, Oneida County Clerk  M

2.   Insurance.

2.1  **Mortgagor** will, at all times, (i) keep the **Collateral** insured against loss by fire for the benefit of **Mortgagee**, (ii) assign and deliver the insurance policies to **Mortgagee** and (iii) reimburse **Mortgagee** for any premiums paid for insurance procured by **Mortgagee** on **Mortgagor's** default in so insuring the **Collateral** or in so assigning and delivering the insurance policies.   The insurance policies shall contain the usual extended coverage endorsement, shall insure the tangible portion of the **Collateral** in an amount at least equal to 100% of the insurable value thereof based on current appraisals in companies acceptable to **Mortgagee**, but in no event less than the amount of the **Mortgage Debt**, and shall provide that with coverage in that amount co-insurance shall not apply.

2.2  **Mortgagor** will, in addition to fire and extended coverage insurance, within 30 days after notice and demand from **Mortgagee**, keep the **Collateral** insured against flood hazard, war risk and any other hazard that may reasonably be required by **Mortgagee**. All of the provisions of section "2.1" relating to fire insurance, and the provisions of Section 254 of the Real Property Law construing the same, shall apply to such additional insurance.

2.3  **Mortgagor** will, at all times, in amounts approved by **Mortgagee**, provide, keep in force and pay for (i) public liability insurance protecting **Mortgagor** from and against any liability, loss· and expense as owner of the **Collateral** for loss of life or personal injury or damage to property by reason of any accident or occurrence on the Premises, including the sidewalks adjacent thereto, and (ii) rental value insurance if **Mortgagor** permits use or occupancy of the **Collateral** to a tenant thereof, and will, at least annually, furnish **Mortgagee** with a certificate or other satisfactory evidence of such insurance.

3.   Taxes, Assessments, etc.

3.1  **Mortgagor** will, before any interest and/or penalty commences to accrue thereon, pay, except for those real estate taxes which **Mortgagee** is required to pay pursuant to the provisions of a written agreement heretofore made between **Mortgagor** and **Mortgagee** relating to the sale and purchase of the **Collateral**, all taxes, assessments, sewer rents or water rates applicable to, or which are a charge or lien upon, the



2007-002616
02/02/2007 11:52AM
Page: 5 of 23

SANDRA J DEPERNO, Oneida County Clerk  M

Collateral, and in default thereof, **Mortgagee** may pay the same.

4. Tax Escrow .

4.1 In the event **Mortgagee** requires, **Mortgagor** will, in order to more fully protect the **Collateral**, pay to **Mortgagee**, on the first day of each month commencing the month the first level payment of interest and principal is required to be paid under the terms of the Note and continuing until the **Mortgage Debt** is fully paid, a payment equal to one-twelfth (1/12th) of the annual real estate taxes, assessments and similar governmental charges (collectively, "Charges") on the **Collateral** (all as estimated by **Mortgagee**), to be applied by **Mortgagee** to the payment of Charges as and when they become due and payable. Such payments shall not bear interest and may be commingled with other funds of **Mortgagee**. Such payments shall be computed so that **Mortgagee** shall have on hand one month before the due date of any Charges the amount necessary to fully pay the Charges on their due date, and if such payments shall be insufficient to do so, **Mortgagor** will pay to **Mortgagee**, on demand, the amount of the deficiency. Any excess of the payments accumulated over the amount needed to pay any Charges on their due date shall, at the option of **Mortgagee**, be credited on subsequent payments to be made by **Mortgagor** hereunder or on the **Mortgage Debt**. Notwithstanding any provision of this paragraph "5" hereinbefore to the contrary, no payments need be made by **Mortgagor** to **Mortgagee** under this paragraph "5" until and unless **Mortgagee** shall give **Mortgagor** notice that **Mortgagor** shall do so.

5. Leases.

5.1 **Mortgagor** will promptly perform and observe each and every provision on **Mortgagor's** part to be performed under any lease of the **Collateral**.

5.2 **Mortgagor** will not accept prepayments of installments of rent (except the installment of rent for the current month) to become due under existing or future tenancies, subtenancies, leases, or subleases to the **Collateral** without the prior written consent of **Mortgagee**.

5.3 **Mortgagor** will treat all security or other deposits received by **Mortgagor** from tenants of the **Collateral** as trust funds in the possession of **Mortgagor**, deposit the same in a bank or trust company and not commingle the same with other funds of



2007-002616
02/02/2007 11:52AM
Page: 6 of 23

SANDRA J DEPERNO, Oneida County Clerk  M

Mortgagor.  Mortgagor will furnish to Mortgagee an accounting of
such funds as Mortgagee shall from time to time reasonably
request.  Mortgagee shall also be authorized by Mortgagor to
request and receive directly from the depositary of such funds
such information in relation to the deposits as Mortgagee may
from time to time reasonably request.

6.  Records.

    6.1  Mortgagor will:

        6.1.1  At all times keep adequate records and books of
account in accordance with generally accepted accounting
principles consistently applied in which full, true, and correct
entries will be made of all dealings and transactions in
relation to the Collateral, the business and affairs of
Mortgagor with respect to the Collateral.

        6.1.2  Permit Mortgagee, as requested through his
representatives designated for the purpose, to inspect the
Collateral and the books and records and all supporting vouchers
and data in relation to the Collateral and to make such extracts
therefrom as may be deemed expedient by Mortgagee.

7.  Further Assurances.

    7.1  Mortgagor covenants that he will do, execute,
acknowledge, deliver, file and/or record or cause to be done,
executed, acknowledged, delivered, filed and/or recorded all and
every such further acts, deeds, conveyances, advances,
mortgages, transfers and assurances in law as Mortgagee shall
reasonably require for the better assuring, conveying,
transferring, mortgaging, assigning and confirming unto
Mortgagee all and singular the Collateral.

8.  Trust Funds.

    8.1  Mortgagor will, in compliance with Section 13 of the
Lien Law, receive the advances secured by this mortgage and will
hold such advances as a trust fund to be applied first for the
purpose of paying the costs of the improvement before using any
part of the same for any other purpose.

9.  Alterations, etc.



2007-002616
02/02/2007 11:52AM
Page: 7 of 23
SANDRA J DEPERNO, Oneida County Clerk  M

9.1  **Mortgagor** covenants that he will not alter, remove or demolish any part of the **Collateral** without the prior written consent of **Mortgagee**, which consent shall not be unreasonably withheld, delayed or conditioned.

10.  Environmental Covenants.

10.1  **Mortgagor** covenants that he will not use the **Collateral** for the manufacture, placement, generation, storage, location, transfer or disposal of any Contaminants (as hereinafter defined) nor permit the **Collateral** to be used in such manner.

10.2  **Mortgagor** covenants that he will not cause or permit to exist a release of any Contaminants onto the **Collateral** as a result of any intentional or unintentional action or omission on his part or for which he is responsible under applicable Environmental Laws (as hereinafter defined). In the event of any release of a Contaminant onto the **Collateral**, **Mortgagor** will promptly remediate such release in accordance with the provisions of the Environmental Laws of any governmental body having jurisdiction.

10.3  **Mortgagor** covenants that he will provide notice in writing to **Mortgagee** of any of the following within three (3) business days:

10.3.1  Any release of any Contaminant onto the **Collateral** or onto any other real property owned, occupied or operated by **Mortgagor** or for which release **Mortgagor** is or may be responsible or with respect to which such responsibility is asserted by a governmental agency or in any private cause of action by a party to such suit; or

10.3.2  Any notice of any pending or threatened Enforcement Action (as hereinafter defined) or assertion of a private cause of action alleging environmental liability with respect to **Mortgagor** or the **Collateral** including copies of complaints, orders, citations or notices received by **Mortgagor** in connection therewith.

10.4  **Mortgagor** will, to the fullest extent permitted by applicable law, defend, indemnify and hold harmless **Mortgagee** from and against any and all loss, cost, expense, claim, liability or asserted liability (including strict liability) due



to the breach or claimed breach of any of **Mortgagor's** representations, warranties or covenants with respect to the environmental status of the **Collateral**, the exercise of any of **Mortgagee's** rights under this mortgage with respect to the environmental status of the **Collateral**, the performance of the remediation by **Mortgagor**, his agents or contractors, or otherwise in connection with any and all claims or proceedings (whether brought by private party or related to any Enforcement Action) for bodily injury, property damage, abatement, remediation, environmental damage or impairment, or any other injury or damage (including all foreseeable and unforeseeable consequential damage) or any diminution in value of the **Collateral** resulting from or relating, directly or indirectly, to:   (i) any Contaminants located upon the **Collateral** or the release of any Contaminants into, from or through the **Collateral** (whether or not such release was caused by **Mortgagor** or a tenant or subtenant or prior owner or tenant of the **Collateral**, and whether or not the alleged liability is attributable to the handling, storage, generation, transportation or disposal of such Contaminants or the mere presence of such Contaminants on the **Collateral**, or (ii) the breach or alleged breach of any Environmental Laws by **Mortgagor**.

MORTGAGOR'S WARRANTIES AND REPRESENTATIONS

11.   Representations, Warranty.

11.1   **Mortgagor** represents and warrants to **Mortgagee** that there are no defenses or offsets to this mortgage or to the **Note**.

MORTGAGOR'S EVENTS OF DEFAULT

12.   Mortgagor's Default:

12.1   The entire unpaid balance of the **Mortgage Debt** shall immediately become due and payable at the option of **Mortgagee**:

12.1.1   after failure by **Mortgagor** to pay any installment of principal or of interest, or any part of either, for fifteen (15) days or more;

12.1.2   after failure by **Mortgagor** to pay any tax, water rate, sewer rent or assessment for thirty (30) days after notice and demand (an assessment which has been made payable in



installments shall nevertheless, for the purpose of this section "12.1", be deemed due and payable in its entirety on the day the first installment becomes due and payable);

12.1.3   after failure by **Mortgagor**, after notice and demand, to assign and deliver the policies insuring the **Collateral** against loss by fire or to reimburse **Mortgagee** for premiums paid on such insurance, as hereinbefore provided;

12.1.4   after failure by **Mortgagor**, after request by **Mortgagee**, to furnish a statement of the amount due on the **Mortgage Debt** and whether any offsets or defenses exist against the **Mortgage Debt**;

12.1.5   after failure by **Mortgagor** to provide to **Mortgagee** receipts showing payment of all taxes, water rates, sewer rents and assessments;

12.1.6   after failure by **Mortgagor**, within three (3) months from the issuance thereof, to comply with any requirements in any order or notice of violation of law or ordinance issued by any governmental department claiming jurisdiction over the **Collateral**;

12.1.7   after failure by **Mortgagor** to observe and timely perform all covenants contained in any lease now or hereafter affecting the **Collateral** or any part thereof on the part of the landlord to be observed and performed;

12.1.8   after failure by **Mortgagor** to keep, observe and perform any of the other covenants, conditions or agreements contained in this mortgage required to be performed or observed by **Mortgagor**;

12.1.9   after the actual or threatened alteration, demolition or removal of any building which is part of the **Collateral** without the written consent of **Mortgagee**;

12.1.10   after the assignment of the rents of the **Collateral**, or any part thereof, without the written consent of **Mortgagee**;

12.1.11   after thirty (30) days notice to **Mortgagor**, in the event of the passage of any law deducting from the value of land for the purposes of taxation any lien thereon, or changing in any way the taxation of mortgages or debts secured



2007-002616
02/02/2007 11:52am
Page: 10 of 23
SANDRA J DEPERNO, Oneida County Clerk  M

9

thereby for state or local purposes;

    12.1.12  in the event of the refusal by two or more
fire or other casualty insurance companies lawfully doing
business in the State of New York, on the application of
**Mortgagee**, to issue policies required by **Mortgagee** as permitted
by this mortgage insuring the buildings and other tangible
property which are part of the **Collateral**;

    12.1.13  in the event that the buildings which are
part of the **Collateral** are not maintained in reasonably good
repair;

    12.1.14  in the event of the entry of final judgment
for the payment of money against **Mortgagor** and failure to
discharge such judgment or to have it stayed pending appeal
within sixty (60) days from the entry thereof, or if such
judgment shall be affirmed on appeal, failure to discharge such
judgment within sixty (60) days from the entry of such
affirmance;

    12.1.15  in the event of the removal, demolition or
destruction in whole or in part of any of the other tangible
property which is part of the **Collateral**, unless the same is
promptly replaced by similar tangible property at least equal in
quality and condition to those replaced, free from security
agreements or other encumbrances thereon and free from any
reservation of title thereto;

    12.1.16  in the event of the filing by or against
**Mortgagor** of a petition seeking a declaration that he is a
bankrupt or the effectuation of an arrangement with creditors or
any readjustment, imposition or extension of indebtedness; or
the entry of any order of any court appointing a receiver or
trustee for **Mortgagor** of all or a substantial portion of the
**Collateral** and failure to have such order vacated or stayed
within sixty (60) days after its entry; or an assignment for the
benefit of creditors by **Mortgagor**; or issuance of a writ or
warrant of attachment or similar process against all or any
substantial portion of the property of **Mortgagor** and failure to
have such writ or warrant or similar process released or bonded
within sixty (60) days after its issuance; or insolvency of
**Mortgagor**;

    12.1.17  in the event that any mechanic's or other


2007-002616
02/02/2007 11:52AM
Page: 11 of 23
SANDRA J DEPERNO, Oneida County Clerk

lien is filed against the **Collateral** and such lien is not discharged of record within thirty (30) days by bonding or otherwise;

12.1.18  in the event that during the term of this mortgage **Mortgagor**, upon request of **Mortgagee**, fails to submit evidence that the buildings which are part of the **Collateral** meet all building codes and comply with all governmental regulations; or

12.1.19  in the event that **Mortgagee** obtains the right to cause the unpaid balance of the **Mortgage Debt** to become immediately due and payable by reason of the terms and provisions of any separate security agreement or assignment of leases given by **Mortgagor** to **Mortgagee** to secure the **Mortgage Debt**.

12.1.20  in the event an "Event of Default" (as such quoted term is defined therein) occurs under the first mortgage which is, as of the date hereof, a lien on the Collateral, and the entire indebtedness secured by such first mortgage becomes entirely due and payable by reason thereof.

12.2  Any event which under the terms and provisions of section "12.1" gives **Mortgagee** the right to cause the unpaid balance of the **Mortgage Debt** to become immediately due and payable shall be deemed an "Event of Default".

12.3  **Mortgagor** will, if there is an Event of Default, pay monthly in advance to **Mortgagee**, or to any receiver appointed to collect said rents, issues and profits, the fair and reasonable rental value for the use and occupation of the **Collateral** or of such part thereof as may be in the possession of **Mortgagor**, and upon default in any such payment will vacate and surrender possession of the **Collateral** to **Mortgagee** or to such receiver and in default thereof may be evicted by summary proceedings.

MORTGAGEE'S REMEDIES

13.  <u>Basic Remedies</u>.

13.1  **Mortgagee** shall have the right, but not the obligation, to foreclose this mortgage by reason of any Event of Default. **Mortgagee**, in any action to foreclose this mortgage, shall be entitled to the appointment of a receiver with respect



2007-002616
02/02/2007 11:52AM
Page: 12 of 23
SANDRA J DEPERNO, Oneida County Clerk

11

to the **Collateral** without notice to **Mortgagor**.  In case of a foreclosure sale, the **Collateral**, or so much thereof as may be affected by this mortgage, may be sold in one parcel.

13.2    If **Mortgagor** shall fail to perform or observe any term of any lease required to be performed or observed by **Mortgagor**, **Mortgagee**, without limiting the generality of any other provision of this mortgage, and without waiving or releasing **Mortgagor** from any of **Mortgagor's** obligations under this mortgage, shall have the right, but not the obligation, after five (5) days' prior notice to **Mortgagor**, to take any action as may be appropriate to cause any term, covenant, condition or obligation of any such lease on **Mortgagor's** part to be performed and **Mortgagor** grants **Mortgagee** the right to enter upon the **Collateral** or to cause his agents, servants, or employees to so enter for such purpose.  If **Mortgagee** shall make any payment, perform any act or take any action, any and all moneys expended by **Mortgagee** in connection therewith including, but not limited to legal expenses and disbursements, together with interest thereon at the rate per annum then specified by the **Note** from the date of each expenditure, shall forthwith be paid by **Mortgagor** to **Mortgagee** on demand by **Mortgagee** and shall be secured by the lien of this mortgage.

13.3    In the event **Mortgagor** shall fail to perform any of the covenants, terms or provisions to be performed by **Mortgagor** under the **Note**, this mortgage and/or under any separate assignment of **Mortgagor's** interest in any lease or leases affecting the **Collateral**, **Mortgagee** shall have the right, but not the obligation, to perform the same and the cost thereof, with interest thereon at the rate then applicable to the **Mortgage Debt**, shall immediately become due from **Mortgagor** to **Mortgagee** and shall be secured by the lien of this mortgage.

13.4    If any action or proceeding be commenced to foreclose this mortgage or to collect the **Mortgage Debt** or any action or proceeding be commenced to which action or proceeding **Mortgagee** is made a party or in which it becomes necessary to defend or uphold the lien of this mortgage, all sums paid by **Mortgagee** for the expense of any litigation to collect the **Mortgage Debt** and/or to prosecute or defend the rights and lien created by this mortgage (including reasonable counsel fees), shall be paid by **Mortgagor**, together with interest thereon at the rate then applicable to the **Mortgage Debt**, and shall be secured by the lien of this mortgage, prior to any right, title to, interest in



2007-002616
02/02/2007 11:52AM
Page: 13 of 23

SANDRA J DEPERNO, Oneida County Clerk M

12

or claim upon the **Collateral** attaching or accruing subsequent to
the lien of this mortgage.  In any action or proceeding to
foreclose this mortgage, or to recover or collect the **Mortgage
Debt**, or any interest due thereon, the provisions of law
respecting the recovering of costs, disbursements and allowances
(including counsel fees) shall prevail unaffected by this
covenant.

14.  Restrictions on Transfers, Secondary Financing, Etc.

    14.1  In the event of (i) any transfer, lease or other
change of ownership or possession of the **Collateral**, or any
interest therein whether occurring by voluntary act or
involuntarily or by operation of law or otherwise, and whether
occurring by deed, land contract, installment sale, or
otherwise, or (ii) the creation of any other lien on the
**Collateral** by way of secondary or subordinate financing (whether
by third mortgage or security agreement, or wrap-around
mortgage, all-inclusive mortgage or otherwise, and regardless of
amount or maturity), the entire unpaid balance of the **Mortgage
Debt** shall become due and payable, at the option of **Mortgagee**,
unless **Mortgagee** has given his prior written consent to the
transaction.  **Mortgagor** acknowledges his understanding that
**Mortgagee** may withhold such consent if, in his sole judgment,
(i) he is not satisfied with the credit standing, character or
managerial experience or ability of any proposed transferee, or
(ii) any secondary or subordinate financing would adversely
affect the cash flow of the **Collateral** so as to impair the
ability of **Mortgagor** to repay the **Mortgage Debt**, or (iii) the
proposed action would adversely affect **Mortgagee's** secured
position for any other reason.

15.  Environmental remedies:

    15.1  In addition to and not in limitation of any other
rights
**Mortgagee** may have under this mortgage, **Mortgagee** shall have the
following additional rights and remedies with respect to the
environmental status of the **Collateral**, but not the obligation,
upon reasonable prior notice to **Mortgagor**, except notice shall
not be necessary in the case of an emergency: to enter onto the
**Collateral** for inspection and to take such actions as he deems
necessary or advisable to clean up, remediate, encapsulate,
remove, resolve or minimize the impact of, or otherwise deal
with, any Contaminants, Enforcement Actions or breaches of

2007-002616
02/02/2007 11:52AM
Page: 14 of 23
SANDRA J DEPERNO, Oneida County Clerk M

13

Environmental Laws pertaining to the **Collateral** or any part thereof which could result in an order, suit or other action against **Mortgagor** and/or which, in the sole opinion of **Mortgagee**, could jeopardize his security under this mortgage.

15.2  **Mortgagee's** rights under section "15.1" shall be exercised by him in his sole discretion and for the benefit of **Mortgagee** only.  **Mortgagee** shall have no obligation to enter onto the **Collateral** or to take any other action which he is authorized by this section "15" to take for the protection of his security.  Any action which he may elect to take hereunder shall be for his own benefit and all third party beneficiary rights are hereby expressly negated.  **Mortgagee** shall have no responsibility for the conduct of **Mortgagor's** environmental practices on the **Collateral** or in any other location.  Any action or inaction by **Mortgagee** hereunder shall not be deemed to constitute the taking of control over **Mortgagor's** waste disposal, waste management or other environmental practices with respect to the **Collateral** or any other property.  All costs and expenses incurred by **Mortgagee** in the exercise of his rights under this section "15" shall be secured by this mortgage and shall be payable by **Mortgagor** upon demand or added to the **Mortgage Debt** at the discretion of **Mortgagee**.

MISCELLANEOUS

16.  <u>Notices</u>:

16.1  All notices, demands or documents of any kind which either **Mortgagee** or **Mortgagor** may be required or may desire to serve upon the other under this mortgage shall be in writing and may be served either by delivering the same to such party personally or by mailing a copy of the same by registered or certified mail addressed to such party at his or her address hereinabove mentioned and, if served by mail, the date of the registry or mailing receipt issued by the postal authorities to be deemed the date of service.

17.  <u>Waiver</u>:

17.1  No delay on **Mortgagee's** part in exercising any right, power or privilege under this mortgage, the **Note**, the assignment of lessor's interest in leases or the security agreement, or any other document made by **Mortgagor**, shall operate as a waiver of any such privilege, power or right.



2007-002616
02/02/2007 11:52AM
Page: 15 of 23
SANDRA J DEPERNO, Oneida County Clerk M

14

18.  U.C.C. application:

18.1  This mortgage, without limitation of any other agreement between **Mortgagor** and **Mortgagee**, shall constitute a security agreement under the Uniform Commercial Code (the "UCC") with regard to all fixtures, chattels and articles of personal property (collectively, the "Personal Property") which are attached to or part of the **Collateral** and/or used in connection with the **Collateral** and all replacements thereof and substitutions therefor, and the proceeds from any of the foregoing, and **Mortgagor**, as Debtor, shall hereby be deemed to have given **Mortgagee**, as Secured Party, a security interest therein under the UCC.

18.2  In addition to and cumulative of other remedies granted in this mortgage, **Mortgagee** may, upon the occurrence of any Event of Default, proceed under the UCC as to all or any part (as **Mortgagee** may elect) of the Personal Property, and shall have and may exercise with respect to the Personal Property all the rights, remedies and powers of a secured party under the UCC, including, without limitation, the right and power to sell at public or private sale or sales, or otherwise dispose of, lease or utilize the Personal Property and any and all part or parts thereof in any manner permitted under the UCC after default by a debtor, and to apply the proceeds thereof toward payment of any costs and expenses thereby incurred by **Mortgagee**, and toward payment of the **Mortgage Debt**, in such order and manner as **Mortgagee** may elect.

18.3  Among the rights of **Mortgagee** following the occurrence of an Event of Default, and without limitation, **Mortgagee** shall have the right to take possession of the Personal Property and to enter upon any **Collateral** where any part of the same may be situated for such purpose without being deemed guilty of trespass and without liability for damages thereby occasioned, and to take any action deemed necessary, appropriate or desirable by **Mortgagee** to repair, refurbish or otherwise prepare the Personal Property for sale, lease or other use or disposition as herein authorized.

18.4  To the extent permitted by law, **Mortgagor** expressly waives any notice of sale or other disposition of the Personal Property and any other rights and remedies of a debtor under the UCC and all procedures and formalities prescribed by law



relative to the sale or disposition of the Personal Property and the exercise of any other right or remedy of **Mortgagee** existing after the occurrence of an Event of Default.

18.5  **Mortgagee**, upon the occurrence of an Event of Default, is hereby expressly granted the right, at his option, to transfer at any time to himself or to his nominee, the Personal Property, or any part or parts thereof, as **Mortgagee** may elect, and to receive the monies, income, proceeds and benefits attributable or accruing thereto, and to hold the same as further security, as **Mortgagee** may elect, and to apply it in payment of the **Mortgage Debt**, in such order or manner as **Mortgagee** may elect.

18.6  Should **Mortgagee** elect to exercise his rights under the provisions of this section "18" as to part of the Personal Property, such election shall not preclude **Mortgagee** from exercising the rights and remedies granted by the other provisions of this mortgage or by law as to the remaining **Collateral**.

18.7  So long as any of the **Mortgage Debt** remains unpaid, **Mortgagor** shall not execute and there shall not be filed in any public office any financing statement or statements affecting the Personal Property other than financing statements in favor of **Mortgagee**.

18.8  All rights and remedies of **Mortgagee** with respect to the Personal Property and available by law or in equity, including without limitation remedies available under the UCC, are cumulative and without limitation to each other. **Mortgagee's** right to proceed against any of the Personal Property under the UCC shall not limit or affect **Mortgagee's** right to proceed against the Personal Property under another provision of this mortgage or otherwise at law or in equity.

18.9  **Mortgagor** hereby authorizes **Mortgagee** or any other holder of this mortgage to file, without the signature of **Mortgagor**, one or more financing statements as provided by law to perfect the security interest of this mortgage or such holder in the Personal Property.

19.  Late charge:

19.1  In the event **Mortgagee** has not received the full

16



amount of interest and principal or other payment required under
the **Note** or this mortgage within fifteen (15) days of their due
dates, **Mortgagor** agrees to pay a charge of five percent (5%) of
the total amount of such installment or other payment to cover
the expense of handling the delinquency.

20.    Modification, etc.

   20.1    This mortgage may not be changed or terminated
orally.    The covenants contained in this mortgage shall run with
the land and bind **Mortgagor**, his distributees, legal
representatives and assigns, and all subsequent owners,
encumbrances, tenants and sub-tenants of the **Collateral**, and
shall inure to the benefit of **Mortgagee**, his distributees, legal
representatives and assigns and all subsequent holders of this
mortgage.    Unless the context otherwise requires:    (i) words in
the singular number include the plural, and in the plural
include the singular; (ii) words of the masculine gender include
the feminine and the neuter, and when the sense so indicates
words of the neuter gender may refer to any gender; and (iii)
reference in this mortgage to "section" refers to a section of
this mortgage.

21.    Interpretation, Invalidity:

   21.1    The validity and enforceability of this mortgage and
all transactions and questions arising under this mortgage shall
be construed and interpreted according to the laws of the State
of New York.    Whenever possible, each provision of this mortgage
shall be interpreted in such manner as to be effective and valid
under applicable law, but if any provision of this mortgage
shall be prohibited by, or invalid under applicable law, such
provision    shall be ineffective to the extent of such
prohibition or invalidity, without invalidating the remaining
provisions of this mortgage.    The section headings contained in
this mortgage are for convenience and reference only and in no
way define or limit the scope and content of this mortgage or in
any way affect the provisions hereof.

22.    Coverage:

   22.2    If there is more than one person designated herein as
**Mortgagor**, the obligations under this mortgage of each person so
designated when the term **Mortgagor** is used shall be deemed joint
and several.



2007-002616
02/02/2007 11:52AM
Page: 18 of 23
SANDRA J DEPERNO, Oneida County Clerk    M

17

23. <u>Recordation</u>:

   23.1    **Mortgagor** hereby covenants that he will cause this
mortgage, together with all other security instruments and
financing statements, to be recorded and filed, as the case may
be, in such manner and in such places as directed by **Mortgagee**
and as may be required by law in order to perfect the lien of
this mortgage. **Mortgagor** covenants that he will, at his
expense, upon request of **Mortgagee**, cause to be filed all
documents requested by **Mortgagee** including, without limitation,
continuation statements under the Uniform Commercial Code, in
such manner and in such places as may be required by law in
order to protect and maintain in force the lien of this mortgage
and the assignment of lessor's interest in leases.

   Without limiting the foregoing, **Mortgagor** hereby
irrevocably appoints **Mortgagee** attorney-in-fact for **Mortgagor** to
execute, deliver and file such instruments for and on behalf of
**Mortgagor** for the purpose of effectuating the provisions of this
section "23.1" without the necessity of the signature of
**Mortgagor** or anyone claiming under or through **Mortgagor**.

   **IN WITNESS WHEREOF**, this mortgage has been duly executed by
Mortgagor.

                         MOHAWK VALLEY HANDICAPPED SERVICES, INC.

             by: _____


STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF ONEIDA     )

   On December 29, 2006, before me, the undersigned, a notary
public in and for said state, personally appeared
Louis B. Tehan personally known to me or proved to me on the
basis of satisfactory evidence to be the individual whose name
is subscribed to the within instrument and acknowledged to me
that he executed the same in his capacity, and that by his
signature on the instrument, the individual, or the person upon
behalf of which the individual acted, executed the instrument.

                         Kim Wilson
                         Notary Public    KIM WILSON
                                          Notary Public, State of New York
                                          No. 01WI5073890
                                          Qualified in Oneida County
                                          Commission Expires March 3, 19 2007

18

2007-0026616
02/02/2007 11:52AM
Page: 19 of 23
SANDRA J DEPERNO, Oneida County Clerk

## SCHEDULE A

ALL THAT TRACT, PIECE OR PARCEL OF LAND situate in the City of Rome, County of Oneida, and State of New York, being more particularly bounded and described as follows:

Beginning at the intersection of the proposed division line between the herein described parcel on the south and the lands of the Oneida County Industrial Development Agency (reputed owner) on the north with the proposed easterly street boundary of Geiger Road; said point being southwesterly along said proposed easterly street boundary 627.3± feet from its intersection with the proposed westerly street boundary of Hill Road; thence through the lands of the Oneida County Industrial Development Agency (reputed owner) the following six (6) courses and distances:

1.  South 51° 54' 44" East, 348.64 feet to a point;
2.  North 38° 05' 15" East, 240.24 feet to a point;
3.  South 50° 47' 05" East, 102.79 feet to a point;
4.  South 50° 50' 01" East, 202.14 feet to a point;
5.  South 38° 05' 15" West, 414.98 feet to a point;
6.  North 85° 43' 41" West, 516.81 feet to its intersection with the aforementioned proposed easterly street boundary of Geiger Road;

Thence along said proposed easterly street boundary of Geiger Road the following two (2) courses and distances:



1.  Northerly along a curve to the right having a radius of 1,999.42 feet, a chord length of 229.55 feet and a chord direction of North 07° 33' 46" East to a point;

2.  Northerly along a curve to the right having a radius of 1,505.86 feet, a chord length of 291.03 feet and a chord direction of North 16° 23' 58" East to the point or place of beginning being 271,105.2± square feet or 6.223 acres, more or less.

Excepting and Reserving therefrom the following described premises:

All that Tract, Piece or Parcel of land situate in the City of Rome, County of Oneida and State of New York, as shown on the map entitled "Map Showing Lands to be Conveyed to Mohawk Valley Handicapped Services, Inc., City of Rome, County of Oneida, State of New York", prepared by Michael P. Waters, P.L.S. No. 50027, and dated November 20, 2006, and revised and redated on December 8, 2006; said Parcel being more particularly described as follows:

Beginning at the intersection of the proposed easterly street boundary of Geiger Road with the division line between the lands of White Birch Landing, LLC (reputed owner) on the north and the existing lands of Mohawk Valley Handicapped Services, Inc. (reputed owner) on the south; said point being southerly along said proposed easterly street boundary of Geiger Road 901.6± feet from a capped iron rod found, located at

baseline station 2+697.571 for the construction of New York State Route 825 "Griffiss Parkway";

Thence northerly along said proposed easterly street boundary of Geiger Road on a curve to the right having a radius of 1,999.42, feet, a chord distance of 108.04 feet, a chord direction of North 05° 49' 12" East to a point;

Thence through the lands of White Birch Landing, LLC (reputed owner) the following two (2) courses and distances:

1.    South 85° 43' 41" East, 237.08 feet to a point;
2.    South 04° 16' 19" West, 108.00 feet to its intersection with the first mentioned division line;

Thence North 85° 43' 41" West along said division line 240.00 feet to the place of beginning, being 25,815.0± square feet or 0.593 acre, more or less.

Together with, subject to and excepting and reserving therefrom all easements, rights-of-way, restrictions, covenants and agreements of record, if any, including, but not limited to, those set forth in a Quit Claim Deed from Griffiss Local Development Corporation to White Birch Landing, LLC dated January 15, 2001 and recorded in the Oneida County Clerk's Office on January 17, 2001 as Book 2952 of Deeds at Page 643.

Together with the non-exclusive right to use, for the easement purposes indicated thereon, over and upon the aforesaid excepted premises, all those easements areas identified as "Sanitary Sewer East", "Sanitary Sewer West", "Storm Drainage" and "Water Line" as shown on the aforesaid map by Michael P. Waters, which easement areas are more particularly bounded and described as follows:

**Easement for Sanitary Sewer Line (west)**

Beginning at a point on the northerly boundary line of the Parcel first described above; said point being easterly along said northerly boundary line of said Parcel first described above 67.88 feet from the northwest corner of said Parcel first described above

thence South 85° 43' 41" East continuing along said northerly boundary line of said Parcel first described above 31.48 feet to a point;

thence through said Parcel first described above the following four (4) courses and distances;

1.    South 22° 01' 00" West, 43.62 feet to a point;
2.    North 85° 02' 01" West, 4.30 to a point;
3.    South 04° 57' 33" West, 14.01 feet to a point;
4.    South 22° 01' 00" West, 55.13 feet to its intersection with the southerly boundary line of said Parcel first described above;

thence North 85° 43' 41" West along said southerly boundary line of said Parcel first described above 31.48 feet to a point;



thence North 22° 01' 00" East through said Parcel first described above 113.40 feet to the place of beginning, being 3,369.8± square feet or 0.077 acre, more or less;

## Easement for Storm Drainage

Beginning at a point on the easterly boundary line of the Parcel first described above; said point being northerly along said easterly boundary line of said Parcel first described above 15.96 feet from the southeast corner of said Parcel first described above;

thence through said Parcel first described above the following two (2) courses and distances;

1. North 87° 54' 00" West, 2.18 feet to a point;
2. South 62° 42' 23" West, 32.36 feet to its intersection with the southerly boundary line of said Parcel first described above;

thence North 85° 43' 41" West along said southerly boundary line of said Parcel first described above 56.18 feet to a point;

thence through said Parcel first described above the following five (5) courses and distances;

1. North 62° 42' 23" East, 53.87 feet to a point;
2. South 85° 02' 11" East, 18.15 feet to a point;
3. North 04° 57' 37" East, 11.45 feet to a point;
4. North 67° 36' 32" East, 13.86 feet to a point;
5. South 87° 24' 20" East, 9.59 feet to its intersection with the easterly boundary line of said Parcel first described above;

thence South 04° 16' 19" West along said easterly boundary line of said Parcel first described above 30.00 feet to the place of beginning, being 1,861.9± square feet or 0.042 acre, more or less;

## Easement for Water Line

Beginning at the southwest corner the Parcel first described above;

thence northerly along the aforementioned proposed easterly street boundary of Geiger Road on a curve to the right having a radius of 1,999.42, feet, a chord distance of 108.04 feet, a chord direction of North 05° 49' 12" East to its intersection with the northerly boundary line of said Parcel first described above;

thence South 85° 43' 41" East along said northerly boundary line of said Parcel first described above 21.53 feet to a point;

thence South 06° 01' 05" West through said Parcel first described above 108.05 feet to its intersection with the southerly boundary line of said Parcel first described above;

thence North 85° 43' 41" West along said southerly boundary line of said Parcel first described above 21.16 feet to the place of beginning, being 2,358.0± square feet or 0.054 acre, more or less;



2007-002616
02/02/2007 11:52AM
Page: 22 of 23
SANDRA J DEPERNO, Oneida County Clerk

**Easement for Sanitary Sewer Line (east)**

Beginning at a point on the southerly boundary line of the Parcel first described above; said point being westerly along said southerly boundary line of the Parcel first described above 5.11 feet from the southeast corner of said Parcel first described above;

thence North 85° 43' 41" West along said southerly boundary line of said Parcel first described above 62.68 feet to a point;

thence North 68° 16' 40" East through said Parcel first described above 82.98 feet to its intersection with the easterly boundary line of said Parcel first described above;

thence South 04° 16' 19" West along said easterly boundary line of said Parcel first described above 33.85 feet to a point;

thence South 68° 16' 40" West through said Parcel first described above 5.77 feet to the place of beginning, being 1,844.2± square feet or 0.042 acre, more or less;

BEING PART OF the same premises conveyed by Griffiss Local Development Corporation to White Birch Landing, LLC by Quit Claim Deed dated January 15, 2001 and recorded in the Oneida County Clerk's Office on January 17, 2001 in Book of Deeds 2952 at Page 643.