Robert L. Rimberg (RLR 2453)
Joel S. Schneck (JSS7019)
GOLDBERG RIMBERG
& FRIEDLANDER, PLLC
115 Broadway, 3rd Floor
New York, NY 10006
(212) 697-3250
Attorneys for Defendants
Stonehedge Acquisition Rome II, LLC
and Stonehedge Acquisition Chittenango II, LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE A. HALBRITTER,<br><br>                          Plaintiff,<br><br>           -AGAINST-<br><br>STONEHEDGE ACQUISITION ROME II LLC and<br>STONEHEDGE ACQUISITION CHITTENANGO<br>II, LLC,<br><br>                          Defendants. | 07 Civ. 3848 (WHP) |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS MOTION TO DISMISS FOR
A LACK OF SUBJECT MATTER JURISDICTION**

GOLDBERG RIMBERG
& FRIEDLANDER, PLLC
  Attorneys for Defendants Stonehedge
  Acquisition Rome II, LLC and
  Stonehedge Acquisition Chittenango II, LLC
115 Broadway, 3rd Floor
New York, NY 10006
(212) 697-3250

## TABLE OF CONTENTS

Table of Authorities ………………………………………………………... ii

Preliminary Statement ..…………………………………………………… 1

Statement of Facts………………………………………………………… 2

I.   **THERE IS NO SUBJECT MATTER JURISDICTIOIN IN THIS CASE, BASED UPON DIVERSITY OF CITIZENSHIP, AND ACCORDINGLY, THE COMPLAINT MUST BE DISMISSED**……3-4

    a.   Plaintiff is A New York Domiciliary Who Has Not Effectively Changed Her Domicile to Florida……………..……5-10

    b.   This Court Does Not Have Subject Matter Jurisdiction Because the Assignment of Right and Interests from Plaintiff's Brother, A New York Domiciliary, to Plaintiff was Entered into to Manufacture Subject Matter Jurisdiction, and Accordingly, the Complaint Must be Dismissed Pursuant to 28 U.S.C. §1359………………..…..… 10-18

TABLE OF AUTHORITIES

<u>Cases</u>                                                                 <u>Page</u>

<u>Airlines Reporting Corporation v. S and N Travel, Inc.</u>, 58 F.3d 857, 861
(2d Cir.1995)...................................................................................11, 12, 14

<u>Beacon Communications Corp.</u>, 863 F.Supp. 179. 181 (S.D.N.Y. 1994)................5

<u>Bender v. Williamsport Area School Dist.</u>, 475 U.S. 534, 541, 106
S. Ct. 1326 (1986).....................................................................................4

<u>Brunswick Corp. v. Creel</u>, 471 So.2d 617, 10 Fla. L. Weekly 1534
(Fla. 5th DCA 1985) (emphasis added)......................................................15

<u>Chappelle v. Beacon Communications Corp.</u>,  863 F.Supp.179. 181
(S.D.N.Y.1994...................................................................................5, 6

<u>Cibran Enterprises, Inc. v. BP Products North America, Inc.</u>, 365 F.Supp.2d 1241,
1251 (S. D. Fla. Feb 24, 2005)..................................................................15

<u>Falow v. Cucci</u>, No. 00 Civ. 4754(GBD), 2003 WL 22999458, *6
(S.D.N.Y. Dec. 19, 2003)....................................................................11, 14, 19

<u>Farmington Village Corp. v. Pillsbury</u>, 114 U.S. 138, 5 S. Ct. 807, 29 L.
Ed. 114 (1885)........................................................................................13

<u>Ferrara v. Philadelphia Labs. Inc.</u>, 272 F.Supp. 1000, 1007-08, <u>aff'd</u>, 393 F.2d 934
(2d Cir.1967)..........................................................................................12

<u>Herrick Co., Inc. v. SCS Communications, Inc.</u> 251 F.3d 315. 322 (2d Cir. 2001)........4

<u>Kades v. Organic Inc.</u>, 00 Civ. 3671, 2003 WL 470331 at *1 n. 3
(S.D.N.Y. Feb.24, 2003)...........................................................................12

Cases                                                                                    Page

Kahn v. C & L Lisa, Co., Inc., 1986 WL 4068 (S.D.N.Y. Mar.31, 1986)...............11

Korb v.Merrill Lynch, Pierce, Fenner & Smith, Inc., 2006 WL 300477
(No. 03 Civ. 10333 (February 7, 2006)....................................................…........5, 6, 12

Kramer v. Caribbean Mills, Inc., 394 U.S. 823, 89 S. Ct. 1487 (1969)...................12

Linardos v. Fortuna, 157 F.3d 945, 947 (2d Cir.1998).............................….….. 5

Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697, 700 (2d Cir.2000)........4

Meriden Square, Inc., 30 F.3d 298, 301 (2d Cir.1994)....................................4

Matter of Hosley v. Curry, 85 N.Y.2d 447, 451, 626 N.Y.S.2d 32, 649 N.E.2d,
1176, rearg. denied 85 N.Y.2d 1033, 631 N.Y.S.2d 292, 655 N.E.2d 405)..................9

National Artists Management Company, Inc. v. Weaving, 769 F.Supp. 1224, 1227
(S.D.N.Y.1991)............................................................................…..……...5, 6

New Holland, Inc. v. Trunk,  579 So.2d 215, 217 (Fla. 5th DCA 1991)
quoting, Price v. RLI Ins. Co., 914 So.2d 1010 (Fla. 5th DCA  2005).......................15

O'Brien v. AVCO Corp., 425 F.2d 1030, 1033 (2d Cir.1969)................................11

Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 193 (2d Cir.2003)...................4, 17

Palazzo ex rel. Delmage v. Corio, 232 F.3d 38, 42 (2d. Cir. 2000)..........................5

Price v. RLI Ins. Co., 914 So.2d 1010 (Fla. 5th DCA  2005).................................15

Prudential Oil Corp. v. Phillips Petroleum Co., 546 F.2d 469, 474 (2dCir.1976).........10, 11, 13

Transcontinental Oil Corp. v. Trenton Prods. Co., 560 F.2d 94 (2d Cir. 1977).............17 n. 4

United Food & Commercial Workers Union, Local 919 v. CenterMark Properties Square, Inc.,
30 F.3d 298, 301 (2d Cir. 1994)............................................................... 4

Robert L. Rimberg (RLR 2453)
Joel S. Schneck (JSS7019)
GOLDBERG RIMBERG
& FRIEDLANDER, PLLC
115 Broadway, 3rd Floor
New York, NY 10006
(212) 697-3250
Attorneys for Defendants
Stonehedge Acquisition Rome II, LLC
and Stonehedge Acquisition Chittenango II, LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| JANE A. HALBRITTER,<br><br>                         Plaintiff,<br><br>               -AGAINST-<br><br>STONEHEDGE ACQUISITION ROME II LLC and<br>STONEHEDGE ACQUISITION CHITTENANGO<br>II, LLC,<br><br>                         Defendants. | 07 Civ. 3848 (WHP) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS MOTION TO DISMISS FOR
## A LACK OF SUBJECT MATTER JURISDICTION

### PRELIMINARY STATEMENT

This case involves an asset sale of two (2) nursing homes in upstate New York, the owners of which are and were New York residents, to New York Limited Liability Companies. The dispute currently before this Court should be litigated in the Courts of the State of New York and not in the United States District Court for the Southern District of New York because there exists **no subject matter jurisdiction**. As will be discussed below, plaintiff, at the time that the instant lawsuit was initiated, was (and continues to be) a New York State domiciliary, and thus, she may not invoke the diversity of citizenship jurisdiction of this Court pursuant to 28 U.S.C. §1332.

Moreover, realizing that she was about to enter litigation and to try to ensure that she could invoke this Court's diversity jurisdiction, plaintiff, her brother Marc Rossi (a New York State domiciliary and 50% partner in the contracts at issue in this case) and her lawyers, improperly arranged for an assignment (Exhibit "S")[1] of Marc Rossi's interest in the underlying agreements in order to manufacture diversity jurisdiction based upon plaintiff' unsuccessful attempts to change her domicile to Florida.

In light of the above, defendants Stonehedge Acquisition Rome II, LLC and Stonehedge Acquisition Chittenango II, LLC, have moved to dismiss for a lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12 (b)(1) and 28 U.S.C. § 1359. and respectfully submit this memorandum of law in support of their motion to dismiss.

## STATEMENT OF FACTS

From approximately 1994 until January 3, 2006, and Halbritter and Marc Rossi each owned 50% of the Capital Stock of each of four corporations (i) Stonehedge Nursing Home Rome, Inc., ("Rome Nursing") which was the licensed operator of, and owned all the tangible and intangible personal property used in the operation of, and provision of patient care services by, a 160-bed skilled nursing facility in Rome, New York; (ii) Stonehedge Realty Rome, Inc., ("Rome Realty") which owned the real property on which the Rome Nursing home was situated; (iii) Stonehedge Nursing Home Chittenango, Inc., (Chittenango Nursing") which was the licensed operator of, and owned all the tangible and

---

[1] All exhibits referenced herein are attached to the accompanying Declaration of Joel S. Schneck. References to Exhibit "E" with page numbers refers to the transcript of the deposition testimony given by Jane Halbritter taken on December 20, 2007.

intangible personal property used in the operation of, and provision of patient care services by, an 80-bed skilled nursing facility in Chittenango, New York; and (iv) Stonehedge Realty Chittenango, Inc., ("Chittenango Realty") which owned the real property on which the Chittenango nursing facility was situated.

In and around August 2004 Jane Halbritter entered into a two Stock Purchase Agreements ("SPA"). One of these (the "Rome SPA") was entered into by defendant Stonehedge Acquisition Rome II, LLC and Rome Nursing and Rome Acquisition (Exhibit "A") and the other was between defendant Stonehedge Acquisition Chittenango II, LLC and Chittenango Nursing and Chittenango Realty (Exhibit "B"). The closing and transfer of ownership took place as of January 3, 2006. At the closing the parties executed a document that was titled a "Receivables Agreement" (Exhibit "C") which discussed a closing adjustment that reduced the purchase price for the facilities.

Plaintiff, Jane Halbritter commenced the instant action with the filing of a Summons and Complaint in this Court on May 18, 2007 (Exhibit "D"). The causes of action include breach of the SPA for both facilities, breach of the Receivables Agreement, unjust enrichment and for an accounting.

## POINT I

### THERE IS NO SUBJECT MATTER JURISDICTION IN THIS CASE BASED UPON DIVERSITY OF CITIZENSHIP, AND ACCORDNGLY, THE COMPLAINT MUST BE DISMISSED.

Plaintiff avers that there is subject matter jurisdiction in this case based upon diversity of citizenship pursuant to 28 U.S.C. §1332.

28 U.S.C. §1332 provides, in pertinent part,

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--
>
> (1) citizens of different States;

A lack of subject matter jurisdiction is a non-waivable defect that may be raised at any time. Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697, 700 (2d Cir.2000); Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 193 (2d Cir.2003). Further, it is clear that "[i]f subject matter jurisdiction is lacking, the action must be dismissed." id. at 700-01 (citing, Bender v. Williamsport Area School Dist., 475 U.S. 534, 541, 106 S. Ct. 1326 (1986); United Food & Commercial Workers Union, Local 919 v. CenterMark Properties Meriden Square, Inc., 30 F.3d 298, 301 (2d Cir.1994)).

It is well-settled that for diversity jurisdiction to exist there must be complete diversity, meaning all adverse parties to the litigation must be "completely diverse in their citizenships." Herrick Co., Inc. v. SCS Communications, Inc. 251 F.3d 315. 322 (2d Cir. 2001); See also Airlines Reporting Corporation v. S and N Travel, Inc., 58 F.3d 857, 861 (2d Cir.1995) (diversity means that "no plaintiff and no defendant may be citizens of the same state.").

4

It is equally well-settled that where subject matter jurisdiction is challenged in a diversity case, plaintiff bears the burden of proof in establishing that diversity jurisdiction existed at the time that the lawsuit was commenced. Linardos v. Fortuna, 157 F.3d 945, 947 (2d Cir.1998). Further, plaintiff must support the allegation of jurisdiction with "competent proof" once those allegations are properly challenged. Id..

A.    Plaintiff Is A New York Domiciliary Who Has
      Not Effectively  Changed Her Domicile to Florida.

For purposes of diversity jurisdiction, citizenship of an individual is based upon his or her domicile. Linardos v. Fortuna, 157 F.3d 945, 948 (2d Cir.1998); Palazzo ex rel. Delmage v. Corio, 232 F.3d 38, 42 (2d. Cir. 2000).  Although a party may have several different residences, he or she may only have one domicile at any given time. See  Chappelle v. Beacon Communications Corp., 863 F.Supp. 179. 181 (S.D.N.Y. 1994).

Where a party has multiple residences, the court must conduct an inquiry to determine a party's intent as to his or her domicile. See  National Artists Management Company, Inc. v. Weaving, 769 F.Supp. 1224, 1227 (S.D.N.Y.1991);  Korb v.Merrill Lynch, Pierce, Fenner & Smith, Inc., 2006 WL 300477, *1 (No. 03 Civ. 10333 (February 7, 2006).

Moreover, where a party changes or attempts to change a domicile, that party also has the "burden of proving the 'require[d] ... intent to give up the old and take up the new [domicile], coupled with an actual acquisition of a residence in the new locality, and must prove those facts 'by clear and convincing evidence.' " Palazzo ex rel. Delmage, supra, 232 F.3d at 42. The Court must examine the conduct of the party

asserting jurisdiction to determine the intended domicile. See National Artists Management Company, Inc. v. Weaving, 769 F.Supp. at 1227.

In evaluating the party's intent and conduct, the Court should consider the following non-exclusive factors "voting registration and voting practices, location of real and personal property, location where taxes are paid, location of brokerage and bank accounts, driver's and other licenses, membership in churches, clubs, and associations, whether the person owns or rents his place of residence, and locations of the person's physician, lawyer, accountant, dentist, or stockbroker." Chappelle v. Beacon Communications Corp., supra, 863 F.Supp. at 181; Korb v.Merrill Lynch, Pierce, Fenner & Smith, Inc., supra, 2006 WL 300477 at *1.

In this case, although plaintiff claims that she has been living in Florida since 2006. In reality she is merely using an apartment that she bought with her estranged husband in 2005. Plaintiff still maintains and uses her New York residence in Rome, New York (Exhibit "E" at pp. 14-15, 46). Plaintiff has failed to relinquish her New York domicile and remains a New York State domiciliary for purposes of subject matter jurisdiction.

First, plaintiff owns a property at 100 West Garden Street, Rome, New York Garden Street, where she lives when she is in Rome, New York (pp. 44-45), and where she pays the taxes, utilities and the like (Exhibit "E" at pp. 73-77), as well as the Florida residence, which she owns together with her estranged husband. (Exhibit "E" at pp. 14-15). Further, and until the summer of 2007 she also maintained an apartment in Boston, Mass (Exhibit "E" at pp. 46-47). Although plaintiff currently has a valid Florida Driver's License (Exhibit "E" at pp. 16-18), on the day that the litigation was

6

commenced, i.e., May 16, 2007), she had only a New York Driver's license. Exhibit "E" at pp. 17.

Further, according to records obtained from the New York State Department of Motor Vehicles and contrary to plaintiff's testimony at the deposition, she still has a **valid** New York State Driver's License that will be valid through July 22, 2010. See Exhibit "I". This factor belies plaintiff's attempt to claim that she has changed her domicile. Moreover, according to records obtained from the New York State Department of Motor Vehicles, and/or by plaintiff's own admission, she still owns the following automobiles which are registered in New York:

- A 1999 Porche, New York License Plate Number CPL9560;

- A 2000 BMW, New York License Plate Number CYK6697;

- A 2004 Ford, New York License Plate Number DFG2083; and

- A Range Rover.

See Exhibit "E" at pp. 19-21.

Additional proof that plaintiff was a New York State domiciliary at the time of the filing of the instant lawsuit can be found in plaintiff's statement at the deposition wherein plaintiff admitted that that she did not effect a change in her voter registration until after the lawsuit in this case was filed, i.e., after May 16, 2007. (Exhibit E at pp. 22- 24). Plaintiff could not state how much of her time is actually spent in Florida. (Exhibit E at pp. 18-19).

Significantly, even after the filing of the instant lawsuit plaintiff continues to:

    1)  maintain a New York State Golf Club membership at the Teugega Country Club in Rome, NY (Exhibit "E" at pp. 28-29, Exhibit "J");

2) use only New York State based accountants (Exhibit "E" at pp. 33-34, Exhibit "K");

3) use only NBT in Rome, New York for her banking needs (Exhibit "E" at p. 26);

4) use a New York State Insurance broker for most of her insurance needs (Exhibit "E" at pp. 24-5, 26, Exhibit "L");

5) Plaintiff's tax bills and documents for companies which she owns are sent to her New York address (Exhibit "M");

6) Plaintiff changed her address with respect to her car insurance **effective November 16, 2007,** is (Exhibit "O"); and

7) Plaintiff signed a sworn Statement of Net Worth pursuant to NY DRL § 236, stating that **as of April 1, 2007,** her "present address" was 100 West Garden Street, Rome, New York. (Exhibit "P").

Plaintiff still owns interests in several New York State Properties and entities including but not limited to James Street Management, Inc., Gore Road LLC, Universal Linen Services, Inc., and Tuxedo Mobile Homes, Inc.  (See Exhibit "M"; See also Exhibit E at pp. 40-45),   In fact, when plaintiff is in Rome, New York, she stays at the property located at 100 Garden Street, which is owned by her company, James Street Management, Inc.  Exhibit "E" at pp. 40-43, 46-47, 73-76.

Plaintiff, who is currently in divorce proceedings pending in the Supreme Court of the State of New York, County of Madison, Halbritter v. Halbritter, Index No. 06-1530, filed a sworn Statement of Net Worth pursuant to NY DRL § 236, stating that **as of April 1, 2007,** her "present address" was 100 West Garden Street, Rome, New York. (Exhibit E at pp. 52-53).

Further proof that plaintiff has not changed her domicile is demonstrated by the fact that plaintiff continues to serve as a member of the Board of Commissioners of the New York State Insurance Fund ("NYSIF").[2] (Exhibit "E" at pp. 37-40, Exhibit "Q"). It cannot be seriously disputed that members of the Board of Commissioners of the NYSIF are Public Officers who must be New York State domiciliaries at the time of their appointment. See NY Workers' Compensation Law at §77; NY Public Officers Law § 3(1) Mckinney's (2007).[3] Indeed,, NY Public Officers Law § 30(1)(d) provides that:

> Every office shall be vacant upon the happening of one of the following events before the expiration of the term thereof:. . .
>
> . . .
>
> d. His ceasing to be an inhabitant of the state, or if he be a local officer, of the political subdivision, or municipal corporation of which he is required to be a resident when chosen.

NY Public Officers Law § 30(d) Mckinney's (2007). Moreover, [t]he terms "resident" and "inhabitant" in these provisions are properly understood to be synonymous with domicile" Matter of Hosley v. Curry, 85 N.Y.2d 447, 451, 626 N.Y.S.2d 32, 649 N.E.2d 1176, rearg. denied 85 N.Y.2d 1033, 631 N.Y.S.2d 292, 655 N.E.2d 405). Thus, once a member of the Board of Commissioners of the New York State Insurance Fund changes his or her domicile, she ceases to be a member of said Board. Plaintiff, by her own admission is still a member of that board and even attended a meeting of the Board of Commissioners of the New York State

---

[2] Plaintiff also continues to serve as a member of a New York based "think tank" called the Rockford Institute, but denies any active participation. See Exhibit "E" at pp. 48-50.
[3] NY Public Officers Law § 3 provides that:
[n]o person shall be capable of holding a civil office who shall not, at the time he shall be chosen thereto, have attained the age of eighteen years. . . be a citizen of the United States, a resident of the state, and if it be a local office, a resident of the political subdivision or municipal corporation of the state for which he shall be chosen. . .

Insurance Fund on December 19, 2007 only one day before her deposition in this case. (Exhibit E at pp.84-87).

In light of all of the above, it is clear that plaintiff was still a New York State domiciliary when the instant lawsuit was initiated on May 16, 2007, and accordingly, there can be no subject matter jurisdiction based upon diversity of citizenship in this case.

B.  This Court Does Not Have Subject Matter Jurisdiction Because the Assignment of Right and Interests from Plaintiff's Brother, A New York Domiciliary, to Plaintiff was Entered into to Manufacture Subject Matter Jurisdiction, and Accordingly, the Complaint Must be Dismissed Pursuant to 28 U.S.C. §1359

Should this Court even question if plaintiff is a New York State domiciliary, plaintiff's complaint states that she brings this suit as part of an assignment from her brother, Marc Rossi. It is undisputed that Mr. Rossi is a New York state resident and a domiciliary of New York.

28 U.S.C. § 1359 states:

A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court.

It is well-settled that where a plaintiff seeks to invoke diversity jurisdiction and where there is an assignment from a New York domiciliary to a non-domiciliary which results in diversity jurisdiction, the courts must exercise great care and careful scrutiny to ensure that the plaintiff is not merely seeking to manufacture diversity jurisdiction, where none would have otherwise existed. Prudential Oil Corp. v. Phillips

Petroleum Co., 546 F.2d 469, 474 (2d Cir.1976) ("Prudential"); see also O'Brien v.

AVCO Corp., 425 F.2d 1030, 1033 (2d Cir.1969). In this Circuit, it has been held that 28

U.S.C. §1359 must "be construed broadly to bar any improper attempt to create federal

diversity jurisdiction." Prudential, 546 F.2d at 475. In preventing improper attempts at

manufacturing diversity jurisdiction courts have applied a **presumption of collusion**

where there is a close relationship between the parties. See Prudential, 546 F.2d at 476

(non-diverse parent corp. assignment of claim to owned diverse subsidiary treated as

presumptively improper); Airline Reporting Corp. v. S and N Travel, Inc., 58 F.3d 857,

863 (2d Cir.1995) (presumption of collusion applied to entity created to collect funds to

on behalf of various corporate assignors); Falow v. Cucci, No. 00 Civ. 4754(GBD), 2003

WL 22999458, *6 (S.D.N.Y. Dec. 19, 2003) (assignment between a corporation and one

of only two existing shareholders and officers must be treated as presumptively improper

or collusive and as having been effectuated for the purpose of attempting to manufacture

diversity jurisdiction); Kahn v. C & L Lisa, Co., Inc., 1986 WL 4068 (S.D.N.Y. Mar.31,

1986) (court applied a presumption of collusion where the assignment was from a non-

diverse corporation to a diverse individual who is the sole owner and officer of that

corporation).

   Once the issue of subject matter jurisdiction is properly raised, the party

asserting diversity jurisdiction has the burden of proving the assignment was not

improper or collusive to manufacture subject matter jurisdiction. Prudential, 546 F.2d at

476.

   In determining whether an assignment was legitimate, courts have

considered several non-exclusive factors including, but not limited to, the identity of the

real parties at interest, whether the assignee is going to remit benefits of the recovery to

the assignor, the timing of the assignment, the lack of any meaningful consideration for

the assignment, the underlying purpose of the assignment and whether it was effected for

legitimate business reasons.  See Airlines Reporting Corp. v. S and N Travel, Inc., 58

F.3d 857, 861-63 (2d cir. 1995) (internal citations omitted).

> Moreover,
>
>> if the assertion of proper diversity is premised on an
>> assignment of the claim to a named plaintiff, the business
>> reason asserted by the plaintiff for the assignment must be
>> sufficiently compelling, such that it is clear that the
>> assignment would have been made absent the purpose of
>> gaining a federal forum. Ferrara v. Philadelphia Labs. Inc.,
>> 272 F.Supp. 1000, 1007-08, aff'd, 393 F.2d 934 (2d
>> Cir.1967)

Kades v. Organic Inc., 00 Civ. 3671, 2003 WL 470331 at *1 n. 3 (S.D.N.Y. Feb.24,

2003).

In Kramer v. Caribbean Mills, Inc., 394 U.S. 823, 89 S. Ct. 1487 (1969)

("Kramer") a Panamanian corporation assigned its contractual rights against a Haitian

corporation to an attorney in the United States, who agreed to pay the Panamanian

corporation 95% of any recovery.  The court found that the lack of consideration for the

assignment and the fact where the assignor retains a substantial interest in the outcome

demonstrated that the assignment violated 28 USC 1359 and that the complaint had to be

dismissed. Kramer,  394 U.S. at 828-830,  89 S. Ct. 1490-91.

In arriving at this conclusion the Kramer court referenced Farmington

Village Corp. v. Pillsbury, 114 U.S. 138, 5 S. Ct. 807, 29 L. Ed. 114 (1885) where Maine

bondholders wanted to challenge the validity of bonds that were issued by a Maine

village in federal court.  To accomplish this, "they cut the coupons from their bonds and

transferred them to a citizen of Massachusetts, who gave in return a non-negotiable two-year note for $500 and a promise to pay back 50% of the net amount recovered above $500." Kramer 394 U.S. at 828-830, 89 S. Ct. at 1489.  The Court concluded that the lawsuit was brought for the benefit of the Maine note holders and that "the transfer of the coupons was 'a mere contrivance, a pretense, the result of a collusive arrangement to create' in favor of this plaintiff 'a fictitious ground of federal jurisdiction,' " Farmington Village Corp. v. Pillsbury, 114 U.S. at 146, 5 S. Ct. at 811.  This was supported, in large part, by the fact that the Plaintiff was required to convey 50% of the amount recovered. Id.

In Prudential, supra, a parent corporation assigned its interest in a contract to its wholly-owned subsidiary. The court ruled the assignment of the claim to a subsidiary shortly before the commencement of the litigation created a presumption of an improper and collusive assignment for the purposes of manufacturing jurisdiction.  Id. at 474-75.  The court explained that the presumption of collusion can only be rebutted if there is evidence that the assignment was for legitimate business purposes "unconnected with the creation of diversity jurisdiction." Id. at 476.  The court found, however, that the subsidiary was engaged in no business other than prosecution of the claim and that there was no legitimate business reason for the assignment. Id., at 476.  Legitimate reasons might include "a saving in taxes or operational costs; eligibility for state licenses or other benefits" id., at 477.  The mere offering of a "business reason" for an assignment will be insufficient to rebut the presumption. Airlines Reporting Corp. v. S and N Travel, Inc., supra, 58 F.3d at 863.  Rather, "the burden falls on the party asserting diversity to demonstrate that the reason given for the assignment is legitimate, not pretextual." Id.

The Court stated further, that scrutiny normally applied to transfers or assignments of claims which have the effect of creating diversity "must be doubled in the case of assignments between related or affiliated corporations since common ownership or the control by one of the other only serves to increase the possibility of collusion and compound the difficulty encountered in detecting the real purpose of the assignment." Id., at 475.

In this case, the Court must apply the presumption that the assignment entered into between plaintiff and her brother was for the improper purpose of manufacturing jurisdiction. Once that presumption is applied and once the Court considers all of the factors set forth in the motion, the instant memorandum and the exhibits annexed, it should be clear the assignment herein was for improper purposes and that subject matter jurisdiction is lacking.

     i.     The Receivables Agreement at Issue in the Case Prohibits
           The Assignment Executed by Plaintiff and Her Brother.

As noted above, the list of factors to be considered in determining whether an assignment was for the improper purpose of manufacturing diversity jurisdiction is not exclusive. See Airlines Reporting Corp., supra, 58 F.3d at 861-63. Thus, in determining whether the assignment at issue in this case was for such an improper purpose, the court should also consider validity of the assignment in the first instance. Falow v. Cucci, supra, 2003 WL 22999458 at *7.

Paragraph 13 of the Receivables Agreement (Exhibit "C") at issue in this case states:

13. <u>Assignment.</u> The rights, interests, of the parties may not be
sold, transferred, assigned, pledged, encumbered or
hypothecated by them, unless expressly permitted in writing by
the other party, which permission may be withheld for any or
no reason.

Thus, the assignment (Exhibit "R") in this case was prohibited by the very same

receivables agreement plaintiff is seeking to enforce. She should not be permitted to sue

in federal court based upon an assignment that was prohibited by the very agreement she

claims is being breached.

The assignment is governed by the law of the state of Florida.

Under Florida law, contractual rights may not be assigned where "such

assignment is **specifically prohibited by the contract.**" <u>New Holland, Inc. v. Trunk</u>,

579 So.2d 215, 217 (Fla. 5th DCA 1991) <u>quoting</u>, <u>Brunswick Corp. v. Creel</u>, 471 So.2d

617, 10 Fla. L. Weekly 1534 (Fla. 5th DCA 1985) (emphasis added);  <u>see also</u> <u>Price v.</u>

<u>RLI Ins. Co.</u>, 914 So.2d 1010 (Fla. 5th DCA 2005); <u>accord</u> <u>Cibran Enterprises, Inc. v.</u>

<u>BP Products North America, Inc.</u>, 365 F.Supp.2d 1241, 1251 (S. D. Fla. Feb 24, 2005).

In this case, the assignment (Exhibit "R"), by its own terms, states that it is

to be governed by Florida law. Because the Receivables Agreement being sued under in

this case specifically states that:

The rights, interests, of the parties **may not** be sold,
transferred, assigned, pledged, encumbered or hypothecated by
them, unless expressly permitted in writing by the other party,
which permission may be withheld for any or no reason
*(emphasis added)*.

Florida law prohibits the assignment in this case, and accordingly, it must be given no

legal effect whatsoever. Without the assignment, there can be no diversity jurisdiction.

15

ii.    The Identity Of The Real Parties At Interest And
Whether The Assignee Is Going To Remit Benefits
Of The Recovery To The Assignor.

The real parties at interest on the plaintiff's side are Jane Halbritter

and Marc Rossi, who are bother and sister, who were 50% partners in SPA and

the receivables agreement at issue in this case. Further, by the terms of the

assignment, Jane and Marc are to share equally in the recovery of any net

proceeds of the litigation minus expenses. (Exhibit "R"). Thus, Marc, a New

York State domiciliary is a real party at interest in this case.

These factors weigh heavily in favor of a finding that the

assignment in this case was improper and collusive and for the purpose of

manufacturing diversity jurisdiction. [4]

iii.    The Consideration for the Assignment.

This factor weigh heavily in favor of a finding that the assignment

in this case was improper and collusive and for the purpose of manufacturing

diversity jurisdiction because the assignment was between a brother and sister

who were 50% partners in the interests outlined in the SPA and receivables

agreement at issue in this case.

---

[4] It is anticipated that plaintiff will argue that it is not collusive or otherwise improper to
assign an agreement when both parties have a financial stake in the outcome of the
lawsuit "so long as the party chosen to bring the suit is in fact the *master of the litigation*"
Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 195 (2nd Cir. 2003), quoting,
Transcontinental Oil Corp. v. Trenton Prods. Co., 560 F.2d 94, 103 (2d Cir.1977). Those
cases, however, are distinguishable from the facts of this case where 1) the assignment
was forbidden by the underlying contract (i.e., the receivables agreement) being sued
upon and 2) plaintiff had not effectively changed her domicile at the time that the
litigation in this case was commenced. Indeed, as outlined in POINT I, supra, there is a
strong argument that plaintiff has still not fully effected a change in her domicile.

Although the assignment recites that it was entered into for valuable consideration, when asked:

> What was the consideration, if you know what that means, given by you to your brother for this assignment of interest and legal claim?

Her attorney objected (Exhibit "E" at pp. 100-102) and plaintiff then refreshed her recollection by examining the assignment and stated:

> I don't really -- no. I'm sorry to say, I just -- I don't see it.
> So I don't remember. I don't recall.

(Exhibit "E" at p. 101). The clear absence of any real consideration militates in favor of a finding that the assignment was for improper purposes.

  iv. <u>The Timing of the Assignment.</u>

  In this case, the assignment from Rossi to plaintiff was executed on April 12, 2007, only 34 days before the lawsuit in this case was filed on May 16, 2007. This factor weighs in favor of finding an improper assignment for the purpose of obtaining subject matter jurisdiction.

  v. <u>The Purported Business Reasons for the Assignment.</u>

  The assignment in this case states that assignment was being executed because it was believed that there was a breach of SPA and the Receivables agreement which caused the buyers to be unjustly enriched. The assignment states further that it was being executed because

> the buyers have declined to cure their breaches of the SPA's and Receivables agreement and have refused to take other steps necessary to make Jane and Marc whole, **with the result that Jane now contemplates the institution of civil legal proceedings to remedy injuries caused by the Buyers conduct.** *(emphasis added)*

Exhibit "R". Thus, it is clear that the assignment was specifically executed for purposes of the instant litigation. This factor also weighs heavily in favor of finding that the assignment was for improper reasons.

To make matters worse, plaintiff has specifically stated that she did not arrange for the assignment for any business purpose, but because she knew she would be initiating litigation and thought it would be easier is she had had the exclusive authority deal with issues. (Exhibit "E" at p. 100). However, a "plaintiff's personal interest and his own financial stake in the litigation are not legitimate business reasons." Falow v. Cucci, supra, 2003 WL 22999458 at *7. Thus, it is clear that assignment of rights from the Marc Rossi to Jane Halbritter was for purposes of manufacturing jurisdiction. This factor, together with all of the other factors outlined above requires a finding of no subject matter jurisdiction and dismissal of the instant lawsuit.

Finally, plaintiff's attorney interfered with the deposition by preventing plaintiff from answering questions directly related to the actual purpose of the assignment. Specifically, when asked the following questions, Ms. Halbritter was instructed not to answer by her attorney:

> Q. Was this your idea, to draft an assignment of
> interest and legal claim? (Exhibit "E" at p.
> 103);
>
> Q. Okay. Was this assignment of interest and
> legal claims signed by you and your brother
> so you could bring an action in federal court?
> (Exhibit "E" at p. 105);

The fact that plaintiff's attorneys drafted the assignment (Exhibit "E" at pp. 99-100) together with the conduct of plaintiff and her attorney in evading questions

that relate to issue of whether jurisdiction was manufactured may even suggest that her attorney was complicit in assisting plaintiff in manufacturing diversity jurisdiction for purposes of the instant lawsuit.

All of the above, and most importantly, plaintiff's own testimony establishes that the assignment was made specifically for litigation purposes and that there was no legitimate business reason for the assignment other that to manufacture of diversity jurisdiction. As such the complaint must be dismissed for a lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and 28 U.S.C. §1359.

Dated:  New York, New York
         January 4, 2008

GOLDBERG RIMBERG
& FRIEDLANDER, PLLC


By: _____
Joel S. Schneck (JSS7019)

GOLDBERG RIMBERG
& FRIEDLANDER, PLLC
Attorneys for Defendants
Stonehedge
Acquisition Rome II, LLC and
Stonehedge Acquisition Chittenango
II, LLC
115 Broadway, 3rd Floor
New York, NY 10006
(212) 697-3250

20