**Allegaert Berger & Vogel LLP**

ATTORNEYS

111 Broadway, 18th Floor
New York, New York 10006
212.571.0550
212 571 0555 Fax

475 Wall Street
Princeton, New Jersey 08540
609.688.9700
609.688.9701 Fax

www.ABV.com

February 5, 2007

**FOR SETTLEMENT PURPOSES
WITHOUT PREJUDICE**

**VIA FEDERAL EXPRESS**

Stonehedge Acquisition Chittenango II, LLC
Stonehedge Acquisition Rome II, LLC
14 Hidden Valley Drive
Suffern, New York 10901
Attention: Joseph Kazarnovsky, Managing Member

Stonehedge Acquisition Rome II, LLC
801 North James Street
Rome, New York 13340
Attention: Joseph Kazarnovsky, Managing Member

Stonehedge Acquisition Chittenango II, LLC
331 Russell Street
Chittenango, New York 13037
Attention: Joseph Kazarnovsky

Gentlemen:

    Thank you for meeting with us on December 20 to discuss Ms. Halbritter's concerns. We have given careful consideration to the issues you raised and, in particular, to the amounts you contend are due to the Buyers.

    The largest of these items is the one you have identified as a "CMI Adjustment" in the amount of $234,933.92. We direct your attention to §3.2(b) of the Stock Purchase Agreements, which governs the parties' obligations with respect to the CMI Adjustment (referring to it as the "PRI Adjustment"):

> Estimated PRI Adjustment. At or prior to the Closing, the Parties, with the assistance of their respective independent accountants, *shall mutually agree on the amount* of the Nursing Company's projected Medicaid reimbursement rate adjustment relating to the Nursing Company's Patient Review Instrument and associated Case Mix Indices (the "Estimated PRI Adjustment") for any fiscal period or portion thereof ending on prior to the Closing Date with respect to which the DOH or the Medicaid fiscal

**Allegaert Berger & Vogel LLP**

Joseph Kazarnovsky, Managing Member
Stonehedge Acquisition Chittenango II, LLC
Stonehedge Acquisition Rome II, LLC
February 5, 2007
Page 2

> intermediary/agent has not, as of the Closing Date, completed its review of the Nursing Company's Medicaid reimbursement rate and issued a final determination or "issuance" with respect to any adjustment in the Nursing Company's Medicaid reimbursement rate for such period(s) (the PRI Adjustment Period") provided however, that the Estimated PRI Adjustment shall not exceed One Hundred Thousand Dollars ($100,000) (the "PRI Adjustment Limit"). If the Estimated PRI Adjustment is an amount that would result in a reduction in the Nursing Company's Medicaid reimbursement rate for the PRI Adjustment Period, the Balance Payment shall be reduced by the Estimated PRI Adjustment up to the PRI Adjustment Limit. If the Estimated PRI Adjustment is an amount that would result in an increase in the Nursing Company's Medicaid reimbursement rate for the PRI Adjustment Period, the Balance Payment shall be increased by the Estimated PRI Adjustment up to the PRI Adjustment Limit. The Parties expressly acknowledge and agree that the $100,000 PRI Adjustment Limit provided for in this Section 3.2(b) constitutes an aggregate limitation for the Estimated PRI Adjustments for both [the Rome and Chittenango Transaction] collectively, and accordingly, the aggregate PRI Adjustment Limits, and concomitantly the aggregate Estimated PRI Adjustments, under [both the Rome and Chittenango Stock Purchase Agreements] shall not exceed $100,000. For example, in the event that circumstances exist that give rise to an Estimated PRI Adjustment under [the Rome Stock Purchase Agreement] in favor of the Buyer in the sum of $80,000 and separately an Estimated PRI Adjustment in favor of the Buyer under the Chittenango Stock Purchase Agreement in the sum of $40,000, the Estimated PRI Adjustments under [the Rome Stock Purchase Agreement] and the Chittenango Stock Purchase Agreement shall not exceed $100,000 in the aggregate.

As the language we have italicized makes clear, the contract required the parties, with the assistance of their accountants, to agree, prior to closing, on an Estimated PRI Adjustment. As the enclosed document shows, the parties agreed on an aggregate Estimated PRI Adjustment of $22,574.01. Unlike other adjustments contemplated by §3, the Estimated PRI Adjustment is not a "representation or certification" by the Sellers, which, if materially inaccurate, might entitle the Buyers to indemnification under §12. Rather, it is an agreed-upon figure, and the Stock Purchase Agreements simply afford the Buyers no recourse if, after closing, they decide the figure

**Allegaert Berger & Vogel LLP**

Joseph Kazarnovsky, Managing Member
Stonehedge Acquisition Chittenango II, LLC
Stonehedge Acquisition Rome II, LLC
February 5, 2007
Page 3

to which they previously agreed was incorrect. (Additionally, §3.2(b) provides that the agreed-upon aggregate Estimated PRI Adjustment shall not exceed $100,000. Therefore, even if the Stock Purchase Agreements provided the Buyers with a post-closing remedy regarding the PRI Adjustment -- which they do not -- the amount the Buyers could claim would be limited to $77,425.99, the difference between the agreed-upon figure and the aggregate limit.) Accordingly, we reject your contention that the Sellers owe the Buyers anything with respect to the PRI Adjustment.

Similarly, we disagree with your assertion that the Buyers are entitled to an offset in the amount of $14,232.14 for "Payroll Expense". As the enclosed documents show, the parties agreed at the closing to Employee Payment Adjustments of $75,000 for Chittenango and $25,000 for Rome.

You have identified a total of $31,424.42 in pre-closing tax liabilities. Please make the back-up documentation for those liabilities available to Ed Mucenski and Bernie LaClair so that they can satisfy themselves that the amount you propose to offset for those liabilities is correct.

You also claim that the Buyers are owed a total of $12,852.39 for tax penalties. If, as we assume, these are penalties incurred due to late payments of pre-closing tax liabilities, we disagree that the Sellers are obliged to indemnify the Buyers for them. Upon closing, the obligation to timely file payroll tax returns and to pay the corresponding taxes passed to the Buyers. That the Buyers may have been entitled to indemnification from the Sellers for pre-closing taxes does not change the fact that it was incumbent on the Buyers to make the tax payments in the first instance; indeed, the Sellers had, by then, ceased to have any lawful authority to sign and file payroll tax returns. It is not the fault of the Sellers if the Buyers failed to make timely filings and payments after closing, and we deny liability for any resulting penalties.

You also claim that the Buyers are owed $11,000 for professional fees incurred in connection with the preparation of the 2005 RHCF-4s, 1099s and W-2s. We disagree. Nothing in the Stock Purchase Agreements imposes on the Sellers any obligation to reimburse the Buyers for routine, post-closing administrative expenses.

Finally, we direct your attention to §12.10(b) of the Stock Purchase Agreements:

> Buyer and Buyer Affiliates, and their successors and assigns, hereby expressly acknowledge and agree that: (i) neither the Sellers nor the

**ABV  Allegaert Berger & Vogel LLP**

Joseph Kazarnovsky, Managing Member
Stonehedge Acquisition Chittenango II, LLC
Stonehedge Acquisition Rome II, LLC
February 5, 2007
Page 4

Company shall have any liability to the Buyer, any Buyer Affiliate, or any successor or assigns thereof, with regard to the Sellers' or the Company's failure to disclose any fact or other information that is required to be disclosed to the Buyer, any Buyer Affiliate, or any successor or assigns thereof pursuant to this Agreement, or which if known by the Sellers, would constitute a breach by the Sellers or the Company hereunder, which fact or other information Buyer or any Buyer Affiliate otherwise had Knowledge of on or prior to Closing or was discovered or *reasonably discoverable by the Buyer or any Buyer Affiliate during the conduct of their due diligence review of the Sellers, the Company and the operations thereof, and (ii) Buyer's decision to consummate the closing of the transactions contemplated hereunder shall constitute a waiver of any claims that either Buyer, any Buyer Affiliate, or their successors and assigns may have against the Sellers or the Company.*

Before the transactions were consummated, the files of the Rome and Chittenango facilities were made available for review and inspection by the Buyers and their representatives. Duly diligent examination of those files would have revealed any overestimates in the value of assets or underestimated liabilities. Accordingly, to the extent any offsets you now propose are based on such overestimates or underestimates, we believe they are precluded by §12.10(b).

In sum, with the possible exception of the pre-closing tax liabilities discussed above, we are not persuaded that the Sellers are indebted to the Buyers or that any of the amounts you have identified are properly offset against the Buyers' obligations to Ms. Halbritter under the Receivables Agreement or to Universal Linen. Please be advised that Ms. Halbritter has instructed us to commence suit to enforce her rights if a more satisfactory resolution cannot be arrived at before February 28, 2007.

Sincerely,

Louis A. Craco, Jr.

Enclosure

AGGREGATE PRI ADJUSTMENT

|  |  | Balance @ 12/31/2005 |
|---|---|---|
| Rome | (A/C # 2072-0010) | (144,160.00) |
| Chittenango | (A/C #2072-0010) | 121,586.00 |
| Total PRI |  | (22,574.00) |
|  |  |  |
| Contract Limit |  | 100,000.00 |

No adjustment for contract limit

Exhibit B

## STONEHEDGE ROME
### EMPLOYEE PAYMENT ADJUSTMENT

| A/C # | A/C NAME | 12/31/2004 CONTRACT DATE | 12/31/2005 CLOSING DATE | CLOSING DATE ADJUSTMENT |
|---|---|---|---|---|
| 2031-0000 | Accrued Wages | 55,887.00 | 63,644.00 | (7,757.00) |
| 2032-0000 | Accrued Vacation/Holiday | 76,289.00 | 78,911.00 | (2,622.00) |
| 2033-0000 | Accrued Personal | 2,479.00 | 3,496.00 | (1,017.00) |
| TOTAL | | 134,655.00 | 146,051.00 | (11,396.00) |

PER CLOSING AGREEMENT   (25,000.00)

Exhibit C

## STONEHEDGE CHITT.
### EMPLOYEE PAYMENT ADJUSTMENT

| A/C # | A/C NAME | 12/31/2004 CONTRACT DATE | 12/31/2005 CLOSING DATE | CLOSING DATE ADJUSTMENT |
|---|---|---|---|---|
| 2031-0000 | Accrued Wages | 35,990.00 | 41,318.00 | (5,328.00) |
| 2032-0000 | Accrued Vacation/Holiday | 37,651.00 | 31,596.00 | 6,055.00 |
| 2033-0000 | Accrued Personal | 491.00 | 228.00 | 263.00 |
| TOTAL | | 74,132.00 | 73,142.00 | 990.00 |

PER CLOSING AGREEMENT    (75,000.00)

Exhibit C