Allegaert Berger & Vogel LLP
111 Broadway, 20th Floor
New York, New York 10006
(212) 571-0550
Attorneys for Plaintiff

UNITED STATES DISRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
                                                        )
JANE A. HALBRITTER,                                     )
                                                        )
                                                        )
                        Plaintiff,                      )
                                                        )      07 Civ. 3848 (WHP)
            -- against --                               )
                                                        )
STONEHEDGE ACQUISITION ROME II, LLC                     )
and STONEHEDGE ACQUISITION                              )
CHITTENANGO II, LLC,                                    )
                                                        )
                        Defendants.                     )
                                                        )
---------------------------------------------------------X

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF HER MOTION TO DISMISS THE
COUNTERCLAIMS**

ALLEGAERT BERGER & VOGEL LLP
Louis A. Craco, Jr. (LC-9786)
Attorneys for Plaintiff
111 Broadway, 20th Floor
New York, New York 10007
Telephone:   (212) 616-7055
Facsimile:   (212) 571-0555
E-mail:      lcraco@abv.com

Plaintiff Jane A. Halbritter respectfully submits this Reply Memorandum of Law in Further Support of her Motion to Dismiss the Counterclaims.

<u>Defendants Entirely Ignored All the SPAs' Notice Provisions.</u>

This issue here is not, as defendants suggest, that they have failed to comply with the notice provisions "strictly" or "perhaps not exactly to the letter" of the SPAs. The reality is that they have not complied with <u>any</u> part of <u>any</u> of the applicable notice provisions <u>at all</u>. The policy of liberally construing pleadings on a Rule 12(b)(6) motion does not allow the Court to ignore explicit provisions of a governing contract. <u>See</u>, e.g., <u>Matusovsky v. Merrill Lynch</u>, 186 F. Supp. 2d 397 (S.D.N.Y. 2002). To allow these Counterclaims to go forward would effectively eviscerate <u>all</u> the following provisions of SPAs:

1. "The Sellers <u>shall</u> <u>have</u> <u>no</u> <u>indemnification</u> <u>obligation</u> under this Article XII unless a Claim Notice (as defined in Section [12.7(f)]) shall be delivered to Sellers by or on behalf of any of the Buyers' Indemnified Persons in the manner provided below." Section 12.2.

2. "If the Indemnified Party fails to provide the Indemnifying Party with the Claim Notice within [twenty calendar days of the receipt of notice of the Third-Party Claim] the Indemnifying Party <u>shall</u> <u>have</u> <u>no</u> <u>indemnification</u> <u>obligations</u> with regard to such Third-Party Claim." Section 12.7(a).

3. "'Claim Notice' [means] written notification of a Third-Party Claim by an Indemnified Party to an Indemnifying Party, <u>enclosing</u> <u>a</u> <u>copy</u> <u>of</u> <u>all</u> <u>papers</u> <u>served</u>, if any, and <u>specifying</u> <u>the</u> <u>nature</u> <u>of</u> <u>and</u> <u>alleged</u> <u>basis</u> <u>for</u> such Third-Party Claim and, to the extent then feasible, the <u>alleged</u> <u>amount</u> or the estimated amount of such Third-Party Claim." Section 12.7(f).

4. " The failure by any Indemnified Party to timely [i.e., within twenty days] deliver an Indemnity Notice to the Indemnifying Party shall release and discharge the Indemnifying Party from any liability or responsibility pertaining to the respective claim." Section 12.7(d).

5. "'Indemnity Notice' [means] written notification of a claim for indemnification (other than a Third-Party Claim) by an Indemnified Party to an Indemnifying Party specifying the nature of and specific basis for such claim and, to the extent then feasible, the amount or the estimated amount of such claim." Section 12.7(g).

6. "In the event that the Company or the Buyer receives any notice, claim, demand or other written document from a Payor or other party that potentially could give rise to or that otherwise relates to a Pre-Closing Payor Liability, the Buyer shall deliver to the Sellers a copy of such notice no later than five (5) business days after the receipt thereof." Section 12.12(b).

7. Sellers will be responsible for Payor Liabilities of the Buyer "[p]rovided the Buyer had given timely and proper notice to the Sellers as provided for in paragraph [12.12(b)]". Section 12.12(c).

8. Except for "Payor Liabilities", Sellers' indemnification obligations survive for only one year after closing unless, within that time, the Buyers give notice of the claim "in accordance with the provisions of this Article XII." Section 12.9.

  9. Sellers' rights to take over the defense of the claim and/or to negotiate directly with the party to whom the liability is owed upon timely delivery of a Claim Notice. Sections 12.7(a), 12.7(d) and 12.12(b).

  10. The 30-day period for Sellers to dispute the claim after the receipt of an Indemnity Notice, and the subsequent 60-day negotiation period before Buyers can sue. Sections 12.7(d) and (e).

  11. The highly specific notice and delivery terms set forth in § 14.7.

(<u>Emphasis</u> added).

  Defendants' conclusory allegation that they "communicated the liabilities to Plaintiff, her brother Marc Rossi and/or their agents" (Def. Opp. Mem. at 5) does not save the Counterclaims. Defendants do not allege that any particular liability was communicated within, or even close to, the contractually specified time. They do not specify the contents of any such "communication". They do not claim even to have sent a <u>defective</u> Claim Notice, Indemnity Notice or Notice of Third Party Payor Liability <u>to anyone</u>. Defendants cite no authority for the idea that "communicat[ing] the liability "to plaintiff's unidentified "agents" could possibly satisfy very specific notice requirements like those of the SPAs. <u>See, generally</u>, <u>RBFC One LLC v. Zeeks, Inc.</u>, 367 F. Supp. 2d 604, 612 (S.D.N.Y. 2005) (rejecting plaintiff's contention that oral conversations between its officer and defendants' agent, described in an "extremely vague and general" way, satisfied contractual provision requiring written notice of alleged breach). Defendants say that they "anticipate" evidence will show there were other communications between defendants and plaintiff's brother (Def. Opp. Mem. at 5) but they describe none of these "other communications" nor submit any evidence of them.

3

Defendants suggest that a December 20, 2006 settlement discussion with two of plaintiff's attorneys (who are not the Sellers' counsel identified in the SPA's notice provision) and subsequent correspondence relating to those discussions[1] satisfies the notice requirements. The settlement discussions in question occurred almost a year after the closing and were aimed at averting this lawsuit. Neither plaintiff, nor any of the other persons to whom the SPAs require notice to Sellers to be delivered, were present for or participated in this discussion. Furthermore, the SPAs specifically provide that notice to counsel alone – even to the counsel identified in the Notice provision – does not constitute sufficient notice. See § 14.7.

This case differs dramatically from cases cited by defendants, such as Contemporary Mission, Inc. v. Famous Music Corp., 557 F. 2d 918 (2nd Cir. 1977), in which the court overlooked a minor deviation from a notice provision, and Schwartz v. Fortune Magazine, 89 F. Supp. 2d 429 (S.D.N.Y. 1999), in which the court found defendants' good faith efforts satisfied a pretermination notice provision that did not specify the content of the required notice. Instead, this case more closely resembles precedents in which contract claims were dismissed for failure to give any notice, or where the notice fell woefully short of the contracts requirements.

---

[1] We are surprised and dismayed that defendants' counsel has chosen to submit the lawyers' correspondence relating to the December 2006 settlement discussions and seeks, albeit unpersuasively, to advance a waiver argument based on the substance of those discussions. By doing so counsel has disregarded the near-universal understanding among lawyers that settlement negotiations are undertaken in confidence and without prejudice and has violated the spirit, if not the letter, of Fed. R. Evid. 408(a). Counsel's attempt to justify this tactic by suggesting the settlement letters are "integral" to the Counterclaims, in the sense that the text of a written contract is integral to a claim alleging its breach, e.g., Broder v. Cablevision, 418 F.3d 187, 196 (2nd Cir. 2005), is futile: defendants' Counterclaims in no way arise from or depend on the content of these letters.

See, e.g., Bausch & Lomb, Inc. v. Bressler, 977 F. 2d 720, 727 (2nd Cir. 1992); Film Line (Cross-Country) Prods. v. United Artists, 865 F. 2d 513, 518 (2nd Cir. 1989); Needham v. Candie's Inc., No. 01 Civ. 7184 LTS FM, 2002 WL 1896892 (S.D.N.Y. Aug. 16, 2002); see also RBFC One at 617 n. 10 (citing other cases).

Defendants contend, incorrectly, that plaintiff was not be prejudiced by their complete disregard of the notice provisions. In truth, the prejudice to plaintiff is manifest. The SPAs condition indemnification for Payor Liabilities (such as the Medicaid demand at issue in the First Counterclaim) on Buyers' provision of detailed notice (including a copy of the demand) within five days. The obvious purpose of this is to allow the Sellers to intervene, either by engaging the Payor (here, Medicaid) in direct negotiations or to take over defense of the claim. Defendants' failure to give notice of the Medicaid demand deprived plaintiff of the opportunity to do either of those things in a timely and informed manner. The rights of indemnification asserted in the other Counterclaims expired over a year ago. To allow defendants to revive them now would deprive plaintiff of the repose the SPAs grant her with respect to those liabilities.

<u>Defendants Have Failed to Show that Plaintiff Waived the Notice Requirements.</u>

In our initial memorandum, we noted the clear command of § 14.8 of the SPAs: "This Agreement shall not be released, discharged, abandoned, changed or modified in any manner except by an instrument in writing executed by or on behalf of each of the parties hereto by their duly authorized officer or representative." Defendants neither contend that a written instrument waiving the notice requirements was ever executed, nor respond to our argument that the foregoing language completely defeats their arguments concerning waiver. (None of the waiver cases cited at pages 7-10 of Defendants' Opposition brief involved a contractual provision like § 14.8.)

Instead, defendants allude, very vaguely, to post-closing communications between them and plaintiff, her brother or unidentified "agents" with respect to which plaintiff did not insist on notice in conformity with the terms of the SPAs. They have no response, however, to our initial showing that even if such communications occurred, § 14.8 precludes any assertion that they waived notice of the liabilities at issue in the counterclaim.

Moreover, none of the communications to which defendants refer concerned matters to which the SPAs' notice provisions apply, or, for that matter, to which the SPAs refer at all. Those communications, therefore, cannot possibly have waived the notice requirements with respect to matters to which the notice provisions unquestionably <u>do</u> apply, like those raised by the Counterclaims. Defendants' citation to § 14.6 of the SPAs is nonsensical. That section does not mention notice and instead refers to actions necessary to carry out "the intention and purpose of <u>this</u> Agreement (i.e., the SPAs themselves). It has no bearing on the Receivables Agreement, or any other matter not governed by the SPAs. See <u>RBFC One</u> at 612 (rejecting plaintiffs' argument that conduct pertaining to one part of an agreement waived requirement for written notice of breach of separate obligations).

Defendants' assertion that plaintiff has made no "reservation of the right to raise the lack of [proper] notice" (Def. Opp. Mem. at 7) is simply incorrect. The settlement letters to defendants and their counsel state that they are "Without Prejudice".

Finally, defendants contend that they should be allowed to assert the liabilities in questions as set-offs. (Def. Opp. Mem. at 11 n. 3). They cite no support for this argument and it is plainly incorrect. Notice in conformity with the SPAs is an explicit condition precedent to the Buyers' rights to indemnification. Defendants' unquestioned failure to give notice cuts off any

6

rights they might otherwise have had to seek indemnification from the Sellers. It matters not whether they seek to enforce those now-extinct indemnification rights by affirmative claim or by set-off.

### Defendants Are Unable to Rebut Our Showing that Six of the Counterclaims Fail as a Matter of Law.

### The First Counterclaim

Defendants do not even try to dispute our showing that the First Counterclaim is fatally defective because it fails to allege that any of the repayments demanded by Medicaid relate to the three years before closing or is not collectible from other sources. They also do not dispute that, even if it stated a claim, the most they could recover under the First Counterclaim would be $112,353.92. Instead, they state they could cure these shortcomings by amendment. They have not cross-moved for leave to amend under Fed. R. Civ. P. 15, however, or proffered an amended pleading, or described, even in general terms, what it is they would allege.

### The Second Counterclaim

Section 12.1(d) provides for the Sellers to indemnify Buyers for employee compensation accrued before closing which has "not been . . . . taken into account for purposes of computing the adjustment to the purchase price provided for in section 3.2(c)" of the SPAs. Defendants do not and cannot dispute that accrued employee compensation at issue in the Second Counterclaim – unused employee sick and vacation time – "[has] been taken into account" for purposes of the § 3.2(c) adjustment, in the form of a $100,000 increase in the purchase price. Rather, defendants "interpret" this language to entitle them to an amount beyond the adjustment, even though the accruals at issue concededly "have been taken into account" in the adjustment. Defendants' interpretation would render the language of the SPAs nonsensical; there would be no

reason to exclude from the indemnification provisions a particular component of compensation which has "been taken into account" for purposes of a closing adjustment if, after closing, the Buyers could seek indemnification in excess of the adjustment anyway.

### The Fourth, Fifth and Sixth Counterclaims

These Counterclaims are all premised on the facially absurd notion that the Sellers remained obliged, weeks or months after the closing, to cause the Acquired Corporations to make various tax or regulatory filings. Defendants cite no authority, of course, for the idea that after closing, the Sellers, who had by then had ceased to be owners or officers of the Acquired Corporations, had any authority to sign any of the Acquired Corporation's tax returns or regulatory submissions or to direct the Acquired Corporations to file them. That responsibility passed at closing to defendants who, apparently, neglected it.

Defendants' effort to foist these responsibilities back onto the Sellers ignores the fact that the Sellers' Certification, § 5.17, is written entirely in the past perfect tense, e.g, "the Company has, within the time and in the manner proscribed by law. . . . (i) duly filed. . . .all tax returns . . . . required to be filed. . . .; (ii) timely paid in full or have made adequate provision for on the Closing Date Balance Sheet all Taxes. . . . "; (iii) complied in all material respects with all applicable laws, rules and regulations. . . .". There is no rational way to read the Sellers' Certification that, as of the closing date, the "Company has" done certain things to mean that, after the closing date, the Sellers will do certain things (which, by then, they will lack any legal power or capacity to do). Certainly, if the parties expected the Sellers to retain some ongoing obligation to effectuate post-closing corporate filings, the SPAs would have said so clearly and also would have contained some express delegation of ongoing authority to Sellers in that regard.

8

### The Seventh Counterclaim

Defendants now disavow the oral promise alleged in ¶ 138 of the Answer, and instead claim to find, in the "language of the [SPAs]", a commitment to engage in a "post-closing adjustment" with respect to December 2005 receivables. This is pure fiction. The SPAs do not provide for any "post-closing adjustment" at all. Furthermore, the SPAs' provision for the net accounts payable/receivables closing adjustment stated that the receivables figure would be discounted by a specified "non-collectible receivables percentage". See § 3.2(a)(iii). This discount is the means by which the parties addressed the possibility that some portion of the Acquired Corporations' receivables outstanding as of the closing date, including the December 2005 receivables, would not be collected.

### Conclusion

Defendants have failed to rebut our showing that each of the Counterclaims is fatally defective. They must all be dismissed.

Dated: January 25, 2008

Louis A. Craco, Jr. (LC-9786)
ALLEGAERT BERGER & VOGEL LLP
111 Broadway, 20th Floor
New York, New York 10007
Telephone:   (212) 616-7055
Facsimile:    (212) 571-0555
E-mail:         lcraco@abv.com

9