Robert L. Rimberg (RLR 2453)
Joel S. Schneck (JSS7019)
GOLDBERG RIMBERG
& FRIEDLANDER, PLLC
115 Broadway, 3rd Floor
New York, NY 10006
(212) 697-3250
Attorneys for Defendants
Stonehedge Acquisition Rome II, LLC
and Stonehedge Acquisition Chittenango II, LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE A. HALBRITTER, | |
| Plaintiff, | 07 Civ. 3848 (WHP) |
| -AGAINST- | |
| STONEHEDGE ACQUISITION ROME II LLC and STONEHEDGE ACQUISITION CHITTENANGO II, LLC, | |
| Defendants. | |

## DECLARATION OF JOSEPH A. GROB
## IN FURTHER SUPPORT OF DEFENDANTS' MOTION
## TO DISMISS FOR A LACK OF SUBJECT MATTER JURISDICTION

JOSEPH A.GROB, an attorney admitted to practice before this Court hereby declares to be

true, under the penalties of perjury, the following:

       1.    I am a member of Goldberg Rimberg & Friedlander, PLLC, attorneys

for defendants Stonehedge Acquisition Rome II LLC and Stonehedge Acquisition Chittenango

II, LLC (collectively referred to as "Stonehedge" or "Defendants") and as such I am personally

familiar with the facts stated herein. I submit this declaration in reply to Plaintiff's opposition

to Defendants motion to dismiss for a lack of subject matter jurisdiction pursuant to Fed. R.

Civ. P. 12 (b) (1).

**A.    Plaintiff Never Intended To Resign from the New York State
Insurance Fund Until After Plaintiff Got Caught.**

2.    Annexed hereto as Exhibits A-D are documents produced by the New York State Insurance Fund ("NYSIF") in response to the *So Ordered* Judicial Subpoena served.

3.    Exhibit A consists of letters demonstrating that Plaintiff has been a member of the Board of Commissioners of the NYSIF since 1997. Exhibit B consists of the directory listing maintained by the NYSIF for Plaintiff as of July 16, 2007. Exhibit B lists 3 Home Addresses for Plaintiff, including but not limited to the residence located at 100 West Garden Street, Rome, N.Y., 13440.

4.    One would think that if Plaintiff no longer considered New York to be her Domicile the address would have notified the NYSIF and have the address omitted.

5.    Significantly, the documents provided by the NYSIF do not include a letter of resignation from Plaintiff on the grounds that she is no longer a NYS resident and/or domiciliary and they do not include any documents indicating that Plaintiff notified the NYSIF of a permanent change of address to the State of Florida.

6.    Exhibit C consists of the minutes of the regular meetings of the Board of Commissioners to the NYSIF held in New York City on February 21, 2007, March 21, 2007, June 20, 2007, July 18, 2007, and September 19, 2007. The documents evidence that except for the March 21, 2007 meeting (which she attended by telephone), Plaintiff attended each of these meetings in person in New York City. Those documents demonstrate further that Plaintiff actively participated in the meetings and that she voted on important issues related to the administration of the State Insurance Fund and not once do they mention that Plaintiff disclosed she was no longer a New York resident.

2

7.    The NYSIF documents also evidence that Plaintiff sought reimbursement for her expenses related to her travel to New York in order to participate in the February 2007 meeting of the Board of Commissioners of the NYSIF. See Exhibit D. Logically, if a non New York State domiciliary is not permitted to serve on the Board of Commissioners of the NYSIF (NY Public Officers Law § 3(1) Mckinney's (2007); NY Public Officers Law § 30(d) Mckinney's (2007)), *a fortiori* that she would also not have been entitled to reimbursement for acting in an official capacity as a NYSIF commissioner. Upon information and belief, this Plaintiff submitted similar requests for reimbursement even after the February 2007 meeting of the Commissioners.

8.    These objective facts flatly contradict Plaintiff's testimony that her involvement with the Board of Commissioners of the NYSIF subsequent to May 16, 2007, was tangential and ministerial and that she merely remained as a holdover until a successor was named. See Affidavit of Jane A. Halbritter in Opposition to defendant's motion to dismiss. ("Halbritter Aff.") at ¶41. Indeed, someone who thinks that his or her term has expired and who was a non-domiciliary would not violate the Public Officer's Law of New York, would not be traveling to New York City regularly to attend meetings and would not be casting a vote as if she is a full fledged Commissioner. Clearly, Plaintiff remained on the Board to benefit from the prestige and political clout of the office while divorcing her politically charged husband. As such, Plaintiff's participation can only be viewed as a manifestation of her clear intention not to abandon her New York State domicile. If this were not the case, Plaintiff could have, and would have, submitted a simple letter of resignation. At the very least, she could have easily notified the NYSIF that she had changed her permanent address from New York to Florida.

Her failure to do so must also be construed as evidence of her intent NOT to abandon her New York State domicile.

**B.    Plaintiff Fails To Include The Address
      Of Her New Domicile To The Ethics Committee.**

9.    Plaintiff states that it was her intent to leave New York from around the time that she sold the Nursing homes and at around the same time that her husband initiated divorce proceedings. Halbritter aff. at ¶¶3, 5. Plaintiff's stated intent regarding domicile is also contradicted by Exhibit E which consists of the Annual Statement of Financial Disclosure that Plaintiff was required by law to file, and that she in fact filed, with the New York State Ethics Commission as a Commissioner of the NYSIF for 2005 and 2006 respectively.    These documents are public records that were electronically filed on June 8, 2006 and May 9, 2007 respectively. It is significant to note that Plaintiff's ethics filings do not indicate any connection with the State of Florida; it mentions only 100 West Garden Street, Rome, New York 103440. This omission is just one more item to a growing list where Plaintiff fails to include that she has a new Domicile – Florida.    The reason is clear; Plaintiff is a New York domiciliary and her omission was anything but accidental.

**C.    Plaintiff's Still Has A Valid New York State Drivers License.**

10.    To the extent that Plaintiff declares that she remitted her NYS Driver's License to the Florida Department of Motor vehicles (Exhibit E to the Schneck Decla. at page 17 and Halbritter Aff.  ¶ 36)[1], those facts are contradicted by the NYS Department of Motor Vehicles records which do not reflect that the license was surrendered or sent to it by Florida. If the license was surrendered as Plaintiff contends, there would be a notation on her NYS

---

[1] References to the Schneck Decla. and /or exhibits to the Schneck Decla refers to the Declaration of Joel Schneck which was filed as a part of defendants' initial motion papers.

driving record. See NYS Department of Motor Vehicles Website[2], a copy of which is annexed

hereto as Exhibit F; See also, Abstract of Plaintiff's Driver's License (Exhibit I to the Scheck

Decla). It is clear that the NYS DMV Abstract of Plaintiff's driver's license, obtained on

December 5, 2007, has no such notation.

**D.      Plaintiff, Under The Penalties Of Perjury, Has Affirmatively
Stated That Rome New York Is Her Continuous Residence/Domicile.**

11.      Plaintiff, in her opposition papers, appears to have a *story* to explain

away every objective fact that demonstrates that she had not effectively change her status as a

New York State domiciliary at the time that the lawsuit herein was filed. The problem with a

*story* is that if you are not careful, it is easy to be caught in a lie.

12.      Annexed hereto as Exhibit G is a copy of Plaintiff's Motion to Change

Venue dated October 4, 2007, that was filed by Plaintiff in her divorce proceeding pending in

Madison County, N.Y. (i.e., Halbritter v. Halbritter, Index No. 06-1530). In those papers,

Plaintiff (defendant in that action) asked the New York Supreme Court to change the venue of

the matrimonial action from Madison County, New York, to Oneida County, New York

**because she lives in Oneaida County, NY**. See Exhibit G at Paragraphs 29 and 30. Those

motion papers, filed long after commencement of the instant lawsuit, unequivocally states that

she has been a continuous resident of "Rome, Oneida County, New York" As follows

> 29. The marital residence of the Plaintiff and Defendant is in Rome, Oneida
> County, New York. In addition, they jointly own a second residence in Rome,
> New York, which they were completely renovating for the purpose of
> establishing their new marital residence in that county. **The Defendant
> continues to reside in Oneida County.**
>
> 30. Since it would appear that a speedy resolution of this matter is important to
> the Plaintiff, and since the **Defendant continues to reside in Oneida County**,
> and the parties jointly own real property in that county, and it is in many

---

[2] http://nysdmv.custhelp.com/cgibin/nysdmv.cfg/php/enduser/std_adp.php?p_faqid=219&p_created=1009976944
&p_sid=DFuEEkWi&p_accessibility=0&p_redirect=&p_lva=&p_sp=cF9zcmNoPTEmcF9zb3J0X2J5PSZwX2dy
aWRzb3J0PSZwX3Jvd19jbnQ9MTEyJnBfcHJvZHM9JnBfY2F0cz0xNSZwX3B2PSZwX2N2P

> respects more convenient to the parties to have this matter in Oneida County, and since this matter will be transferred to a new Judge in any event at some time in the future, the Defendant is hereby requesting a change of venue to the County of Oneida, new York, at this time so that the parties may proceed accordingly

Although the above-quoted language is contained in her attorney's affirmation, the final (2) two pages of Exhibit G contain the affidavit of Jane Halbritter where she makes the following statement under oath and under the penalties of perjury:

> **I have thoroughly read and reviewed the Affirmation of my attorney, Jon. W. Brenizer, Esq., submitted in this matter, and I know the contents thereof to be true and accurate. I am requesting that the contents of my attorney's affirmation be incorporated by reference in this, my affidavit, as if fully set forth herein.**

These above-referenced matrimonial filings articulate Plaintiff's intent to remain a New York domiciliary and they should be considered dispositive as to the issue of Plaintiff's intent. At the very least they show that (i) Plaintiff has been caught in her own web of lies and half truths; and that (ii) Plaintiff's counsel, Mr. Craco, while picking one document from the matrimonial action, inexplicably failed to attach critical pleadings in which Plaintiff took a contrary position to the arguments advanced in the instant litigation. If nothing else, it should be clear is that when Plaintiff wants something, she will do and say whatever is necessary to get it, even if it means filing competing and possibly perjurious statements before different tribunals. Further, Plaintiff cannot wiggle out of these statements, as she has attempted to do with her sworn statement of "Net Worth" (Exhibit P to the Schneck Aff.) by claiming that she merely "signed it without giving any thought" (Halbritter Aff. at ¶ 34). Submitting sworn statements to any tribunal must not be taken lightly. In any event, by her own brazen admission in her matrimonial action, dated October 4, 2007, Plaintiff continues to reside in Oneida County, New York, and **NOT** in Florida. This fact weighs heavily against a finding that Plaintiff changed

her domicile to Florida. In fact, Plaintiff's inconsistent previous affidavit in the matrimonial action must preclude Plaintiff from taking a contrary position in this case.

13.    Similarly, Plaintiff contends that her divorce action was commenced by her husband and that the location of her divorce action should not be held against her with respect to her intent as to her domicile. Halbritter Aff. at ¶30. Although Plaintiff's contention may have some preliminary appeal, that contention is simply disingenuous in light of the fact that plaintiff subsequently moved to change Venue to her county of residence, i.e., Oneida County, New York out of convenience to the parties where she repeated, under oath, that Rome, New York is her home and that she continues to reside in Rome, NY. By the same token, if Plaintiff is actually a Florida domiciliary who only comes to NY infrequently, her allegations in support of her motion for a change of venue i.e., that it would be more convenient to litigate in Oneida, are absurd.

14.    Plaintiff's self-serving declarations that she was not living in Rome, New York, and that she barely used the Teugega Golf Club in Rome, New York (Halbritter Aff. at ¶34-35) certainly ring hollow in light of the admissions made in the Court papers submitted in her matrimonial action in order to bolster a position for requested relief. See Exhibit G; See also Exhibit H.

15.    Further, in her affidavit in opposition to defendant's motion to dismiss Plaintiff states that her intent to change her domicile to, Naples, Florida is evidenced by a copy of an order signed by Judge Dennis K. McDermott where he granted her the **interim** relief of sole use and occupancy of the home that she owns together with her estranged husband in Naples, Florida. See Halbritter Aff. at ¶ 24; See also Exhibit 23 to the Halbritter Aff. This fact doe **NOT** establish an intent to change of domicile. Rather, it merely demonstrates that

7

Plaintiff has properties in different locations and that she will take inconsistent positions depending on what she needs to say to secure a victory in court.

16.    It is important to note that, prior to our receipt of Plaintiff's opposition papers, defendants were unaware of the order filed in the matrimonial action in that Plaintiff did not produce a single document from the matrimonial action on the issue of subject matter jurisdiction, other than her statement of New Worth, and now seeks to sandbag defendants with an order granting her **interim** (i.e., non-permanent) use and occupancy of the Naples, Florida residence. Indeed, Plaintiff seeks to bolster her claim of a Florida domicile by using papers she failed to produce in discovery and where she made statements, under oath, that are inconsistent with the notion that she effectively changed her domicile.

17.    Significantly, Plaintiff has failed to submit the motion papers filed on her behalf in connection with her motion for use and occupancy and to reinstate the security system and golf memberships. She did not append those papers to the Halbritter Aff. because the affidavit of her divorce attorney, that was appended to those motion papers (dated July 11, 2007), annexed hereto as Exhibit H makes it crystal clear that Ms. Halbritter's domicile is Rome, New York, Exhibit H  at ¶5.    In those motion papers, Plaintiff also seems to be complaining about not having access to the very same golf club that she barely uses and to protect a house she allegedly does not live in any more. See Exhibit H at ¶¶ 5, 6, 9 and 11. Those motion papers provide further objective proof that Plaintiff was a New York Domiciliary who considered Rome, New York to be her home.

18.    I have also been informed that in Plaintiff's answer to her divorce proceeding, copies of which are not currently in defendants possession, Plaintiff admitted that she resided in New York as of April 2007, only a month before the instant lawsuit was filed.

Such a statement completely belies Plaintiff's claim that she moved to Florida in 2006 and suggest further that Plaintiff is engaged in an effort to manipulate this Court. In that regard, it is curious that Plaintiff chose to bring this lawsuit in the Southern District of New York when defendants and the relevant properties at issue are located in Oneida County, which is located in the Northern District of New York. Clearly Plaintiff is attempting to engage in improper forum shopping which must not be countenanced by this Court.

### E.    Plaintiff's Business Relationships Reflect Her Continued Presence In NY And Militate Against A Finding Of A Change In Domicile.

19.    It is undisputed that at the time that the lawsuit was filed, Plaintiff still maintained and operated several New York State based business such as James Street Management, Inc., Gore Road LLC, Universal Linen Services, Inc., and Tuxedo Mobile Homes, Inc. See Exhibit "M" to the Schneck aff; See also Exhibit E to the Schneck aff at pp. 40-45. Maintaining, owning and operating these New York State based businesses reflect that at the time of the filing of the instant lawsuit, Plaintiff had considerable personal and professional holdings in New York that were not forsaken by Plaintiff's move to a Florida residence. Indeed, maintaining these businesses exhibit Plaintiff's intent to have a continuing business relationship in New York and to even maintain a residence in New York so she could attend to her businesses and gain political clout as a NYS Commissioner. In that regard, it should be noted that Plaintiff has testified that her rent checks for her Florida residences were written by her. Halbritter Aff. at ¶¶10 and 12; See also Exhibits 1 & 3 to the Halbritter Aff. Those checks might have been written by Plaintiff, but they drawn on the account of James Street Management, Inc., a New York State corporation owned by Halbritter. Exhibits 1 & 3 to the Halbritter Aff. Thus, Plaintiff used her New York Corporation as her own personal piggy bank to pay her expenses. The fact that Plaintiff is involved in the day to day operations

of several New York State corporations and uses those corporations to pay her personal

expenses (putting aside the legality of doing so), when viewed with the other facts in this case,

supports the conclusion that Plaintiff's intent was to remain a New York State domiciliary.

**F.    Plaintiff's Vehicles, Registration and Insurance.**

20.    Plaintiff does not and cannot dispute that all of her vehicles are

registered in New York State and that she did not change her registration when she **allegedly**

changed her domicile. Indeed, she contends that even though she relocated to Florida, she did

not see a need to change the registration on her leased or owned vehicles. See Halbritter Aff at

¶37. Plaintiff does not and cannot dispute that all of her vehicles are registered and insured in

the State of New York, and not in the State of Florida, in that her exhibits include New York

State insurance cards and not State of Florida insurance cards. Exhibit 10 to the Halbritter Aff.

See also Exhibit O to the Schneck Decla (demonstrating that Plaintiff, contrary to the Halbritter

Aff. at ¶ 19, did not attempt to change her address with Traveler's until November 2007). It is

respectfully submitted that Plaintiff was hoping that since her insurance cards were issued for a

12 month period, no one would appreciate the fact that the request for change of address was

only completed in November 2007, as reflected by the change of endorsement). In sum,

Plaintiff's vehicles are registered and insured in New York, **NOT Florida**. . These factors

further support a finding that Plaintiff has not changed her domicile.

21.    Plaintiff's interpretation of the anti-assignment clause at §13 of the

Receivables Agreement (exhibit __ to the Schneck Aff.) is incorrect, and as with most of the

allegations made by Plaintiff, is only half of the story.

22.    Section 13 of the Receivables Agreement states:

"13. Assignment – The rights and interests of the parties may not be
sold, transferred, assigned, pledged, encumbered or hypothecated by

10

them unless expressly permitted in writing by the other party, which permission may be withheld for any or not reason."

Plaintiff's counsel, Mr. Craco, argues singular verses plural, all of which is nonsense[3]. The plain meaning of the Receivables Agreement is that the document was never intended to be assigned even among the parties without the consent of all the parties to the Agreement. This is evidenced by a subsequent Receivables Agreement (Exhibit "I")[4] drafted by Plaintiff's counsel to reflect the actual credit given to buyers of $657,229.00 for the Disputed Receivables (a copy of the signed Closing Statement is annexed hereto as Exhibit "J"). In the subsequent Receivable Agreement there are definitions that "Party" and Parties":

"(each individually a Party" and collectively, the "Parties")

23.    This clarification is important as it clarifies any question as to the non-assignment clause. It allows only one reading which is that the "Parties" are not allowed to transfer, assign, pledge, encumber or hypothecate without the permission of the other party – being defined in the document each signatory to the Receivable Agreement is called a party. In other words, any action as stated in Section 13 required the approval of Stonehedge Acquisition Chittenango II LLC, Stonehedge Acquisition Rome IILLC, Jane A. Halbritter and Marc A, Rossi.

---

[3] As it stands now it is questionable whether plaintiff has stated a cause of action, without the Receivables Agreement Plaintiff has no cause of Action at all.
[4] This document was drafted by Plaintiff's counsel and Plaintiff's counsel never returned a fully executed copy after Defendant's executed and transmitted their copy to counsel, and accordingly, we are not in possession of a copy of this agreement that was actually executed by Plaintiff.

## CONCLUSION

22.     As outlined herein and the accompanying memorandum of law, and as previously discussed in defendants' original motion papers, the Plaintiff, at the time that the instant lawsuit was initiated, was (and continues to be) a New York State domiciliary, and thus, she may not invoke the diversity of citizenship jurisdiction of this Court pursuant to 28 U.S.C. §1332.

WHEREFORE defendants pray for an Order dismissing the complaint herein for a lack of subject matter jurisdiction.

Dated:  New York, New York
        January 28, 2008

                                    _____
                                    JOSEPH A. GROB (JAG 7975)
                                    ROBERT L. RIMBERG (RLR 2453)
                                      GOLDBERG RIMBERG
                                      & FRIEDLANDER, PLLC
                                    Attorneys for Defendants Stonehedge
                                    Acquisition Rome II, LLC and
                                    Stonehedge Acquisition Chittenango II,
                                    LLC
                                    115 Broadway, 3rd Floor
                                    New York, NY 10006
                                    (212) 697-3250