Robert L. Rimberg (RLR 2453)
GOLDBERG RIMBERG
& FRIEDLANDER, PLLC
115 Broadway, 3rd Floor
New York, NY 10006
(212) 697-3250
Attorneys for Defendants
Stonehedge Acquisition Rome II, LLC
and Stonehedge Acquisition Chittenango II, LLC

SOUTHERN DISTRICT OF NEW YORK

JANE A. HALBRITTER,

                              Plaintiff,                    07 Civ. 3848 (WHP)

              -AGAINST-

STONEHEDGE ACQUISITION ROME II LLC and
STONEHEDGE ACQUISITION CHITTENANGO
II, LLC,

                              Defendants.

## MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS MOTION TO DISMISS FOR A LACK OF SUBJECT MATTER JURISDICTION AND IN REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

GOLDBERG RIMBERG
& FRIEDLANDER, PLLC
   Attorneys for Defendants Stonehedge
   Acquisition Rome II, LLC and
   Stonehedge Acquisition Chittenango II, LLC
115 Broadway, 3rd Floor
New York, NY 10006
(212) 697-3250

TABLE OF CONTENTS

Table of Authorities ………………………………………………………... ii

Preliminary Statement ...……………………………………………… 1

Statement of Facts………………………………………………………… 1

**I.    THIS COURT HAS NO SUBJECT MATTER JURISDICTION
       BASED UPON DIVERSITY OF CITIZENSHIP, AND
       ACCORDINGLY, THE COMPLAINT MUST BE DISMISSED….1,2**

       a.    Plaintiff Must be Estopped From Taking Inconsistent
             Factual Positions Based on Plaintiff's Sworn Statements
             Submitted In A Contemporaneous Judicial Proceeding………..2-5

       b.    Plaintiff's Continuing Service On the Board of the
             New York State Insurance Fund Belies Her Claim of
             An Intent To change Her Domicile……………………….……5-6

       c.    Plaintiff's Driver's License and Voter Registration
             Were Not Changed Until After Commencement Of
             The Instant Lawsuit……………………………………….6-7

       d.    Plaintiff's Inconsistent Position In This Action And
             The Matrimonial Action……………………………………...7-8

**II.   THE ASSIGNMENT IN THIS CASE CANNOT CONFER
       SUBJECT MATTER JUJRISDICTION UPON THIS COURT….9-10**

Conclusion………………………………………………………………10

TABLE OF AUTHORITIES

Cases                                                                                              Page

Bank of India v. Subramanian, 2007 WL 1424668, *4
(S.D.N.Y. May 15, 2007) (NO. 06 CIV. 2026 (WHP)......................................2

Bates v. Long Island Railroad Co., 997 F.2d 1028, 1037 (2d Cir.),
cert. denied, 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 452 (1993)......................7

Bevilaqua v. Bernstein, 642 F.Supp. 1072, 1074 (S.D.N.Y.1986) ...........................2

Carden v. Arkoma Associates, 494 U.S. 185, 189, 195-96, 110 S. Ct. 1015,
( Feb 27, 1990)........................................................................................9

Creaciones Con Idea, S.A. de C.V. v. Mashreqbank PSC, 232 F.3d 79, 82 (2000......7

Palazzo ex rel. Delmage v. Corio, 232 F.3d 38, 42 (2d. Cir. 2000).......................2

Guedes v. Guedes 45 A.D.3d 533, 845 N.Y.S.2d 416 N.Y.A.D. 2 Dept.,2007.........8

Linardos v. Fortuna, 157 F.3d 945, 947-948 (2d Cir.1998)...............................1

Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 47,
109 S. Ct. 1597 (1989)..............................................................................1

National Artists Management Company, Inc. v.
Weaving, 769 F.Supp. 1224, 1228 (S.D.N.Y.1991).......................................2

Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 195 (2nd Cir. 2003)

Palazzo ex rel. Delmage v. Corio, 232 F.3d 38, 42 (2d. Cir. 2000).......................2.

Transcontinental Oil Corp. v. Trenton Prods. Co., 560 F.2d 94, 103 (2d Cir.1977)......9

Unanue v. Unanue, 141 A.D.2d 31, 38-39, 532 N.Y.S.2d 769)............................8

Weslock v. Weslock, 280 A.D.2d 278, 719 N.Y.S.2d 653..................................8

Wittich v. Wittich, 210 A.D.2d 138, 139, 620 N.Y.S.2d 351)..............................8


Statutes

28 U.S.C. § 1359....................................................................................10

## PRELIMINARY STATEMENT

In response to defendants' motion to dismiss for a lack of subject matter jurisdiction,

plaintiff has submitted a self-serving affidavit as to her intent to change her domicile from New

York to Florida prior to the filing of the instant lawsuit. Set forth below and in the

accompanying Declaration of Joseph A. Grob ("Grob Decla"), and as previously set forth in

defendant's original motion papers, plaintiff has not evidenced any intent to give up her New

York domiciliary status and in fact submitted sworn affidavits in other proceedings clearly

establishing that she is fact still a New York domiciliary.

## STATEMENT OF FACTS

The statement of facts is outlined in defendants' original moving papers and the

accompanying Declaration of Joseph A. Grob, and will not be repeated herein.

## POINT I

**THIS COURT HAS NO SUBJECT MATTER JURISDICTION BASED UPON DIVERSITY OF CITIZENSHIP, AND ACCORDNGLY, THE COMPLAINT MUST BE DISMISSED.**

It is axiomatic and undisputed that for purposes of diversity jurisdiction, a party's

citizenship depends on his domicile and that the relevant inquiry centers of the party's domicile

at the time that the lawsuit was filed. Linardos v. Fortuna, 157 F.3d 945, 947-948 (2d Cir.1998).

Additionally, although a party may have several different residences, it is also possible

for a party to reside in one place, such as Florida, but still be domiciled in another, like New

York. See Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 47, 109 S. Ct. 1597

(1989).

As Plaintiff concedes, she must establish her alleged change in her domicile by clear and

convincing evidence. Memorandum of Law in  Opposition to Defendants' Motion to Dismiss for

a Lack of Subject Matter Jurisdiction ("Plaintiff's Mem.") at pp. 2-3; See also, Palazzo ex rel.
Delmage v. Corio, 232 F.3d 38, 42 (2d. Cir. 2000).

Although Plaintiff attempts to meet this heavy burden by submitting her own self-serving
affidavit, a party's own assertion concerning his or her intent is given only "slight weight when
they come into conflict with other facts that tend to disclose a contrary intent." Bank of India v.
Subramanian, 2007 WL 1424668, *4 (S.D.N.Y. May 15, 2007) (NO. 06 CIV. 2026 (WHP)
(quoting Bevilaqua v. Bernstein, 642 F.Supp. 1072, 1074 (S.D.N.Y.1986).

In this case, when the court examines the totality of the circumstances together with
the non-exclusive factors outlined for consideration in determining whether plaintiff
effectively changed her domicile at the time that the lawsuit herein was filed, the only
conclusion that can be reached is that there is no diversity jurisdiction herein See e.g.,
National Artists Management Company, Inc. v. Weaving, 769 F.Supp. 1224, 1228
(S.D.N.Y.1991)(outlining factors to be considered in determining domicile).

A.   Plaintiff Must Be Estopped From Taking Inconsistent
     Factual Positions Based On Plaintiff's Sworn Statements
     Submitted In A Contemporaneous Judicial Proceeding.

Plaintiff's declaration in opposition to Defendants' motion is not only self serving but
directly contradicted by an affidavit that she signed in October 2007 (long after this action was
commenced) as part of her divorce proceeding in Madison County, N.Y.  In the matter of
Halbritter v. Halbritter, Index No. 06-1530, plaintiff (who is the defendant in the divorce
proceeding) sought a change of venue from Madison County, New York, to Oneida County,
New York.  The affirmation submitted by Plaintiff's counsel, affirmed to on October 27, 2007, at
paragraphs 29 and 30 states unequivocally that plaintiff is a resident of "Rome, Oneida County,

New York." See Generally Exhibit G to the Grob. Decla. Specifically, the affidavit states, as

follows:

> 29. The marital residence of the Plaintiff and Defendant is in
> Rome, Oneida County, New York. In addition, they jointly own a
> second residence in Rome, New York, which they were completely
> renovating for the purpose of establishing their new marital
> residence in that county. **The Defendant continues to reside in
> Oneida County**.
>
> 30. **Since it would appear that a speedy resolution of this
> matter is important to the Plaintiff, and since the Defendant
> continues to reside in Oneida County, and the parties jointly
> own real property in that county, and it is in many respects
> more convenient to the parties to have this matter in Oneida
> County, and since this matter will be transferred to a new
> Judge in any event at some time in the future, the Defendant is
> hereby requesting a change of venue to the County of Oneida,
> new York, at this time so that the parties may proceed
> accordingly.** Exhibit F at paragraphs 29 and 30, pp. 13-14
> (Emphasis added).

Appended to her attorney's affirmation was plaintiff's sworn affidavit that states, in part:

> I have thoroughly read and reviewed the Affirmation of my
> attorney, Jon. W. Brenizer, Esq., submitted in this matter, and I
> know the contents thereof to be true and accurate. I am requesting
> that the contents of my attorney's affirmation be incorporated by
> reference in this, my affidavit, as if fully set forth herein.

Exhibit G to the Grob. Decla. The admissions made in those affidavits establish beyond a doubt

that plaintiff was and continues to be domiciliary of Oneida County, New York. Thus, by her

own admission, **plaintiff resides in Oneida County, New York, and NOT in Florida**.

Moreover, plaintiff cannot avoid these sworn statements by claiming, as she did with

regard to the sworn statement regarding her "net worth," that she was merely signing legal

papers and that that she was not paying attention to the details or that she thought her lawyers

meant "the area where the divorce was pending." Affidavit of Jane A. Halbritter in Opposition

3

to Defendant's Motion to Dismiss. ("Halbritter Aff.") at ¶ 34. Indeed, her statements with regard to jurisdiction in this case now seem perjurious in light of the affidavits filed with the Court in Madison County. Grob Decla. at ¶¶ 10-12; Compare Halbritter Aff. with Exhibits G & H to the Grob Decla.

Plaintiff's affidavit, submitted to this Court, states that she was not living in Rome, NY, and that she barely used the Teugega Golf Club in Rome, N.Y. In support of these contentions, plaintiff submits a copy of an order issued in her matrimonial action by Judge Dennis K. McDermott wherein he

    i.      granted a motion denying plaintiff's husband's request interim relief;

    ii.     denied plaintiff's husband's request for use of the Florida residence.

See Halbritter Aff. at ¶ 24; See also Exhibit 23 to the Halbritter Aff. In that very same Order, Judge Dennis K. McDermott also indicated that that order was not final, i.e., that it was an "**interim**" order, subject to further orders of the court. Exhibit 23 to the Halbritter Aff. Further, that same order directed both plaintiff and her estranged husband to continue to jointly pay all carrying charges related to the Florida property that they were each previously paying. Exhibit 23 to the Halbritter Aff. Thus, it is clear that while the N.Y.S. State Supreme Court (on December 10, 2007) awarded plaintiff **interim** exclusive use and occupancy of a property which was owned jointly with her estranged husband, it does not establish a final finding that plaintiff will receive the Florida residence as part of any divorce decree issued in the future, and it does not establish that plaintiff intended to change her domicile. See Exhibit 23 to the Halbritter Aff. Indeed, the Florida property is subject to distribution as a martial asset and may not even be awarded to plaintiff at the conclusion of the matrimonial action. Accordingly, interim use and

4

occupancy of the Florida property does not establish plaintiff's intent to reside there permanently.

Additionally, in that same proceeding, it appears that plaintiff was upset that her husband caused a the security system in her 100 West Garden Street home to be deactivated and that her husband somehow caused her membership at the Teugega Golf Club to be cancelled. If, as plaintiff contends, she was no longer living in Rome, New York, her applications to have the alarm and membership reinstated should have been unnecessary. One thing is clear, however, Plaintiff NEVER told the Court in Madison County that she was permanently domiciled in Florida, as it would have negated any justification to change venue.

B      Plaintiff's Continuing Service On The Board
       Of The New York State Insurance Fund
       Belies Her Claim Of An Intent To Change Her Domicile.

The business records of the New York State Insurance Fund ("NYSIF") establish that plaintiff was a member of the Board of Commissioners ("Board") of the NYSIF since 1997. Grob Decla at 3: See also Exhibit B to the Grob Decla. These documents show that the NYSIF maintains a directory listing for "Commissioner" Halbrtitter with several addresses, including but not limited to the residence located at 100 West Garden Street, Rome, N.Y., 13440. Grob Decla at 3: See also Exhibit B to the Grob Decla. These documents establish further that plaintiff personally attended and actively participated in the Board meetings of the NYSIF that were held in New York City on February 21, 2007, June 20, 2007, July 18, 2007, and September 19, 2007, and that she voted on important issues related to the administration of the State Insurance Fund. Similarly, those documents show that plaintiff sought reimbursement for traveling to New York City for the February 2007 meeting. Presumably, the NYSIF should not be reimbursing a non-resident for travel as a non-resident is not permitted to serve on the Board of Commissioner of

5

the NYSTF. Thus, it follows that if plaintiff is sought reimbursement, she did so as a New York State domiciliary/resident and member of the Board of Commissioners of the NYSIF.

Plaintiff claims that her activities as a member of the Board of the NYSIF subsequent to May 16, 2007, were essentially ministerial until a successor was named and/or out of a sense of obligation. See. Halbritter Aff. at ¶41. Someone who thinks that his or her term as a Commissioner of the New State Insurance Fund has expired would not be traveling to New York City regularly to attend meetings and vote on issues when he or she is not a New York State domiciliary. Clearly, plaintiff wanted to remain on that Board to help her maintain her New York State political clout while divorcing her politically charged husband. As such, plaintiff's participation can only be viewed as intent not to abandon her New York State domicile.

C.    Plaintiff's Driver's License And Voter Registration Were
      Not Changed Until After Commencement Of The Instant Lawsuit

Plaintiff has admitted that she did not change her voter registration or voting practices or her driver's license to Florida until after the lawsuit in this case was commenced. Halbritter Aff. at ¶°23; See also Exhibit E to the Declaration of Joel S. Schneck in Support of Defendants' motion to dismiss ("Schneck Decla"). at pp. 17, 22- 24.

Further, Plaintiff's claim that she surrendered her NYS Driver's license is belied by the fact that the records obtained from the New York State Department of Motor Vehicles reflects that she still has a **valid** New York State Driver's License that will be valid through July 22, 2010. See Exhibit "I" to the Schneck Decla. Had plaintiff remitted her NYS Driver's license as she contends she did, there would be a notation on her NYS driving record. See Grob Decla. at 8; See also Abstract of Plaintiff's driving license (Exhibit I to the Schneck Decla.). Even if plaintiff did surrender her NYS license, there was no diversity when this action was commenced. The fact that plaintiff was still registered to vote in New York and that she maintained a New

6

York State driver's license on the day the instant lawsuit was filed runs contrary to her self-serving affidavit, and accordingly, Plaintiff's statement of her own intent should not be given any weight.

     D.     Plaintiff's Inconsistent Positions In This Action And The Matrimonial Action.

     Plaintiff's inconsistent factual positions made in sworn statements submitted to this Court and the Supreme Court of the State of New York, Madison County (in the context of her ongoing matrimonial proceeding) are the epitome of forum shopping.[1]  On the one hand, Plaintiff states for purposes of the New York Domestic relation law that she is a "resident" of New York State, Oneida County and she moved to change venue on that ground.  On the other hand Plaintiff argues, for purposes of maintaining diversity jurisdiction within this Court, that her intention is to be a Florida domiciliary.  These positions are factually and legally contrary and this Court must not allow this litigant to play fast and loose with the power of this Court to entertain the substance of this litigation.[2]

---

[1]  Plaintiff's selection of the Southern District as her choice of venue is curious considering the bulk of her New York contacts and the lex loci of the transaction occurred within the boundaries of the Northern District.

[2]  It was the hope of movant to utilize the doctrine of "Judcial Estoppel" in an effort prevent the Plaintiff from claiming inconsistent factual positions as a matter of law.  The doctrine aims to protect "the sanctity of the oath and the integrity of the judicial process." *Bates v. Long Island Railroad Co.*, 997 F.2d 1028, 1037 (2d Cir.), *cert. denied,* 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 452 (1993). *Bates* identified "two distinct objectives behind judicial estoppel, both of which seek to protect the judicial system. First, the doctrine seeks to preserve the sanctity of the oath by demanding absolute truth and consistency in all sworn positions.... Second, the doctrine seeks to protect judicial integrity by avoiding the risk of inconsistent results in two proceedings." *Id.* at 1038 (footnote omitted).

The Second Circuit, however, has refrained from utilizing the doctrine when determining the threshold issue of subject matter jurisdiction. Creaciones Con Idea, S.A. de C.V. v. Mashreqbank PSC, 232 F.3d 79 (2000.),.. In Creaciones, the Court "note[d] that 'principles of estoppel do not apply' to questions of subject matter jurisdiction. *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702, 102 S. Ct. 2099 (1982)." *Id at 82.*  Plaintiff's patently contradictory sworn statements, however, may be just the basis for establishing an exception to the rule.

New York State Courts, in the context of a matrimonial proceeding, look to the residence of a party to determine if the Court has subject matter jurisdiction over the familial dispute. "Residency", for purposes of subject, matter jurisdiction are controlled by the New York Domestic Relations Law § 230. Indeed,

> [t]he durational residency requirements of Domestic Relations Law § 230 may be satisfied by proving that a party has been domiciled or has resided in New York for the continuous period of time specified in the applicable subdivision of Domestic Relations Law § 230 (see Unanue v. Unanue, 141 A.D.2d 31, 38-39, 532 N.Y.S.2d 769). Physical residency is not the sole test for determining compliance with Domestic Relations Law § 230, but is an alternative to domicile (see Weslock v. Weslock, 280 A.D.2d 278, 719 N.Y.S.2d 653; Wittich v. Wittich, 210 A.D.2d 138, 139, 620 N.Y.S.2d 351). Domicile, once established, unlike mere physical residency, is presumed to continue and is controlled by the subjective intent of the party claiming domicile (see Unanue v. Unanue, 141 A.D.2d 31, 38-39, 532 N.Y.S.2d 769).

Guedes v. Guedes 45 A.D.3d 533, 845 N.Y.S.2d 416 N.Y.A.D. 2 Dept.,2007.

Plaintiff has unequivocally stated in her affidavits filed in the New York Matrimonial Proceeding that she is a "Resident of Oneida County". Plaintiff, by her own admissions to this Court has stated that she has not continuously resided in New York. Going so far as to to articulate the actual time periods she spent in Florida versus time spent in New York. Clearly, Plaintiff's claim to be a resident for DRL purposes cannot be premised on the continuous prong of the DRL standard. Therefore, Plaintiff's only basis to claim New York residency in the matrimonial proceeding must be based on her intended domicile; to wit, Plaintiff's intention is to remain in New York. Certainly, her application to maintain and ensure proper security remains on her Rome residence and her motion seeking to maintain her membership at the Teuga golf club are indicia of a person who is strengthening roots not winding up personal matters.

In sum, it appears that Plaintiff did little, if anything, to create a public record of her so called "change of domicile" until after the instant lawsuit was filed. This would suggest that litigation before this Court was initiated at the suggestion of counsel who did not contemplate a

8

challenge to subject matter jurisdiction. Thus, once the issue arose, plaintiff quickly attended to

the details of attempting to create a paper trail to support jurisdiction which did not exist on the

day that the instant lawsuit was filed so that this case does not get dismissed. Plaintiff's counsel,

however, could not account for plaintiff's conduct in the matrimonial action that completely

negate any intent to relocate to Florida permanently.

POINT II

**THE ASSIGNMENT IN THIS CASE CANNOT CONFER
SUBJECT MATTER JURISDICTION UPON THIS COURT.**

On the issue of the assignment, plaintiff, citing, Oscar Gruss & Son, Inc. v.

Hollander, 337 F.3d 186, 195 (2nd Cir. 2003) and Transcontinental Oil Corp. v. Trenton Prods.

Co., 560 F.2d 94, 103 (2d Cir.1977) argues that it is not collusive or otherwise improper to

assign an agreement when both parties have a financial stake in the outcome of the lawsuit "so

long as the party chosen to bring the suit is in fact the *"master of the litigation."*

In the first instance, those cases are distinguishable from the facts of this case

where 1) the assignment was forbidden by the underlying contract (i.e., the Receivables

Agreement) being sued upon and 2) plaintiff had not effectively changed her domicile at the time

that the litigation in this case was commenced.

In the alternative, it is respectfully submitted further that the assignment

agreement is not actually an assignment, but a new partnership agreement to share in the

proceeds of the lawsuit, after expenses. If the assignment at issue is actually a partnership

agreement, then the court must look to the domicile of all of the partners to determine whether

there is diversity jurisdiction. *See, e.g.,* Carden v. Arkoma Associates, 494 U.S. 185, 189, 195-

96, 110 S. Ct. 1015, ( Feb 27, 1990). It is respectfully submitted that if plaintiff could not have

brought suit initially as a partner in the underlying agreements because there would have been no

9

diversity, the assignment/partnership agreement to share in the proceeds of the instant litigation is defective for the same reasons even if plaintiff is the so called "master of the litigation."

Finally, plaintiff in this case has been playing fast and loose with competing sworn allegations of fact in order to incur a benefit in this Court, as well as the Supreme Court in Madison County.  As such, the assignment must be scrutinized to determine whether it was actually for **"improper or collusive"** pursuant to 28 U.S.C. § 1359.

### CONCLUSION

In light of all of the above and the original motion papers filed in this case it is respectfully submitted that there is no subject matter jurisdiction in this case, and this matter must be dismissed.  At the very least, plaintiff's competing versions of her residency warrant a hearing to resolve any factual raised by the instant motion.

Dated: New York, New York
      January 28, 2008

GOLDBERG, RIMBERG
& FRIEDLANDER, PLLC

By:_____
Joseph A. Grob (JAG 7975)
Robert L. Rimberg (RLR 2453)

Attorneys for Defendants
Stonehedge Acquisition Rome II,
LLC and
Stonehedge Acquisition Chittenango
II, LLC
115 Broadway, 3rd Floor
New York, NY 10006
(212) 697-3250

Joseph A. Grob (JAG 7975)